

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-28-1997

# Belculfine v. Aloe

Precedential or Non-Precedential:

Docket 96-3237

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Belculfine v. Aloe" (1997). *1997 Decisions.* Paper 92.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/92

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 96-3237
_____

PASCHAL F. BELCUFINE;
SCOTT BERRINGER; GUY GADOLA;
MARGARET HROMYAK; EDWARD KRAFFT;
BETTY LAWRENCE; JOSEPHINE NAUMAN;
KEN SEKERSKY; JAMES R. ZWIKL;
H. SPENCER CARLOUGH; RICHARD D. OWEN;
RICHARD BORNES, and other
similarly situated salaried individuals,

Appellants

v.

MARK ALOE; ANDREW ALOE,
individuals, jointly and severally, and
SHENANGO INC.,

Appellees
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
_____

(D.C. Civil No. 95-cv-01615)
_____

Argued: November 26, 1996
Before:  GREENBERG, ALITO, and ROTH, <u>Circuit Judges</u>:

(Opinion Filed: April 28, 1997)
_____

Lee R. Golden, Esq. (Argued)
Todd T. Zwikl, Esq.
Suite 660 USX Tower,
Pittsburgh, PA 15219

<u>Attorneys for Appellants</u>

Jay Flowers Conti, Esq. (Argued)
BUCHANAN INGERSOLL, P.C.
One Oxford Centre, 20th Floor
300 Grant Street
Pittsburgh, PA 15219

Wendy E.D. Smith, Esq.

1

KIRKPATRICK & LOCKHART LLP
1500 Oliver Building
Pittsburgh, PA 15222

Clem C. Trischler, Esq. (Argued)
Raymond G. McLaughlin, Esq.
38th Floor
One Oxford Centre
Pittsburgh, PA 15219

Attorneys for Appellees

---

OPINION OF THE COURT

---

ALITO, Circuit Judge:

Under Pennsylvania law, when a corporation fails to pay wages and benefits that it owes its employees, the corporation's top officers can be held personally liable for the non-payments. See, e.g., Carpenters Health and Welfare Fund v. Ambrose, Inc., 727 F.2d 279, 282-83 (3d Cir. 1983); see also Antol v. Esposto, 100 F.3d 1111, 1119 (3d Cir. 1997). The purpose of this rule is to give top corporate managers an incentive to use available corporate funds for the payment of wages and benefits rather than for some other purpose. Carpenters, 727 F.2d at 282-83. Holding the managers personally liable serves to give them an incentive not to divert funds away from the payments owed to employees. The issue raised by this case is what happens when their company files a Chapter 11 bankruptcy petition and the employees seek to recover from the corporate managers for unpaid vacation and retirement benefits that were allegedly earned in the pre-petition period, but that became due only in the post-petition period. The filing of a petition for bankruptcy under Chapter 11

2

of the Bankruptcy Code bars the payment of pre-petition claims by the company.  See 11 U.S.C. § 362 (providing for automatic stay of creditors' efforts to seek repayment); In re Eagle-Picher Indus., Inc., 963 F.2d 855, 861 (6th Cir. 1992).  The question, then, is whether, in this context, where, by law, the company's managers have no discretion to order payment of the amounts owed to the employees, they can simultaneously be held liable for not making the payments.  We think not.

I.

The Shenango Corporation ("Shenango") is a Pennsylvania-based producer of coke and iron products.  In December 1992, Shenango filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  A group of Shenango's former employees (the "employees") claim that they are owed specific sums of money for vacation and supplemental retirement benefits.  They filed this action pursuant to the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 Pa.C.S.A. § 260.1 et seq.  The employees' complaint asserted that Mark and Andrew Aloe, as officers of Shenango[1], were personally liable for the benefits payments not made by Shenango.

The WPCL arms Pennsylvania employees with a statutory vehicle for the collection of unpaid wages and benefits and

_____

1.  Mark A. Aloe was a member of Shenango's board of directors from March 25, 1986 until February 17, 1993, and was chief executive officer and chairman of the board from March 25, 1986 through June 20, 1990.  Andrew Aloe has been on the board of directors since March 25, 1986, and has been chief executive officer in the period subsequent to the filing of the bankruptcy petition.

provides for penalties to be imposed for non-compliance.  See 43 Pa.C.S.A. § 260.1 et seq.  The WPCL defines an "employer" to include "every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth."  43 Pa.C.S.A. § 260.2a.  The definition of an "employer" under the WPCL has been held to include a corporation's highest ranking officers, because they are the persons who are likely to have "established and implemented the policy for the non-payment" of the wages and benefits at issue.  Carpenters, 727 F.2d at 283. In addition to providing for civil remedies and penalties, see 43 Pa.C.S.A. § 260.9a, the WPCL also provides for criminal penalties, see 43 Pa.C.S.A. § 260.11a.

The employees in this case are seeking recovery of vacation pay and supplemental retirement benefits.  If Shenango had not filed for bankruptcy, it appears that the Aloes, as officers of Shenango, might indeed have been personally liable for the claimed amounts.  Any sums that may have been due and owing by Shenango prior to the filing of the Chapter 11 petition appear to fall within the ambit of the WPCL and, thus, arguably were residual obligations of the Aloes.  The employees' claims here, however, arose out of the post-petition cessation of the employees' benefits.  The claims arose out of pre-petition obligations, but arose with respect to payments that came due in the post-petition period.

4

The employees originally brought their action in Pennsylvania state court. The Aloes then removed the action to the United States District Court for the Western District of Pennsylvania pursuant to the bankruptcy removal statute, 28 U.S.C. § 1452, which generally permits the removal of any claim or cause of action if the district court has subject matter jurisdiction under 28 U.S.C. § 1334.[2] From there, the matter was referred to the bankruptcy court. The bankruptcy court granted Shenango's and the Aloes' motions for summary judgment on the ground that the WPCL was pre-empted by federal bankruptcy law. The district court affirmed the grant of summary judgment, but not based on pre-emption. The court reasoned that because the filing of a Chapter 11 bankruptcy petition operated to <u>bar</u> Shenango from making payments on debts, such as the employees' claims, that came <u>due</u> in the <u>post-petition period</u>, the purpose of the WPCL would not be furthered by holding the corporation's officers personally liable.[3] We affirm.

---

2. The Aloes, through a third-party complaint, joined Shenango as a defendant on a claim for indemnification. The indemnification claim was based on the by-laws of Shenango that imposed an affirmative obligation on Shenango to indemnify its officers and directors for reasonable expenses, judgments, fines, or costs incurred in a legal proceeding.

3. In a recent case, <u>Antol v. Esposto</u>, 100 F.3d 1111, 1114 (3d Cir. 1997), employees brought suit under the WPCL against a corporation's officers and shareholders for wages <u>earned in the post-petition period</u> pursuant to a Collective Bargaining Agreement ("CBA"). The court rejected the WPCL claims on the ground that the suit was based on the terms of the CBA and was therefore preempted by the Labor Management Relations Act and the National Labor Relations Act. <u>Id.</u> The court noted, however, that 11 U.S.C. § 1113 provides that a CBA remains in full force in a Chapter 11 proceeding until rejection is approved by a bankruptcy judge, <u>id.</u> at 1121 n.4, and that, in the Chapter 11

II.

A. Subject Matter Jurisdiction

The employees question whether the bankruptcy court had subject matter jurisdiction over this matter.  They argue here, as they did before the district court, that (1) the Aloes' claim for indemnification against Shenango is barred by 11 U.S.C. § 502(e)(1)(B) because it is a contingent claim against the bankrupt estate, (2) the Aloes' indemnity claim is barred by the terms of Shenango's confirmed plan because the Aloes did not file a timely proof of claim before the bankruptcy court, and (3) the Aloes' indemnity claim was a collusive attempt to manufacture jurisdiction.

In analyzing the question of subject matter jurisdiction, the district court first looked to the relevant statutory sections.  Pursuant to 28 U.S.C. § 1334(b)[4], a district court

(..continued)
context, arbitration brought pursuant to a CBA is not subject to the automatic stay.  Id.

4.  Similarly, pursuant to 28 U.S.C. §§ 157 (a) & (b)(1):

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

6

shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

Under the above provision, the answer to whether there is subject matter jurisdiction depends on whether the cause of action "aris[es] under," "aris[es] in," or is "related to" a case under title 11 -- in this case, the Shenango bankruptcy proceeding. See 28 U.S.C. § 1334(b).

The employees are suing the Aloes for nonpayment of amounts allegedly owed to them by Shenango. Based on an express provision in Shenango's by-laws, the Aloes have an indemnification claim against Shenango. The district court held that, at a minimum, the existence of this indemnification claim demonstrated that the employees' claims against the Aloes could conceivably have an effect on the bankruptcy estate and therefore satisfied the "related to" test. Hence, the court determined that there was subject matter jurisdiction over the cause of action.

In Pacor v. Higgins, 743 F.2d 984 (3d Cir. 1984), we explained that:

the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy . . . . Thus, the proceeding need not necessarily be against the debtor or debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

7

Id. at 994 (internal citations omitted; emphasis in original).

Pacor holds that the reach of "related to" jurisdiction is very broad, extending to any action the outcome of which "could conceivably have any effect on the estate being administered in bankruptcy." Id.; see also Donaldson v. Bernstein, 104 F.3d 547, 552-53 (3d Cir. 1997). Based on the broad reach of the term "related to," we agree with the district court's determination that it had subject matter jurisdiction over the employees' action. In fact, Pacor specifically notes that contractual indemnity claims can have an effect on a bankruptcy estate and thus provide a basis for the exercise of "related to" jurisdiction. 743 F.2d at 995; see also A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 1001 (4th Cir.), cert. denied, 479 U.S. 876 (1986).[5]

_____

5. In an analogous context, the Sixth Circuit affirmed a stay granted by a district court in derivative actions against a bankrupt debtor corporation's non-bankrupt directors. See In re Eagle-Picher Indus., Inc., 963 F.2d 855, 857 (6th Cir. 1992). The debtor corporation in Eagle-Picher had filed a Chapter 11 petition and availed itself of the automatic stay against creditor actions. Id. There remained, however, actions against two of the debtor corporation's individual officers. Id. Reasoning, in part, that the existence of absolute indemnity agreements between the officers and the debtor corporation created such an identity between the debtor and the individual officers that allowing the suit to proceed against the officers would, in effect, be allowing the suit to proceed against the bankrupt debtor, the court affirmed the stay on the actions against the non-bankrupt officers. Id. at 860-61; see also David A. Skeel, Jr., Rethinking the Line Between Corporate Law and Corporate Bankruptcy, 72 Tex. L. Rev. 471, 501 & n.128 (1994). The rationale applied in Eagle-Picher was one first articulated in A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 999-1001 (4th Cir.), cert. denied, 479 U.S. 876 (1986), that has since been adopted by this Circuit. See McCartney v. Integra Nat'l Bank N., 106 F.3d 506, 510-11 (3d Cir. 1997) (describing and applying the Robins principle).

8

The employees' attacks on the district court's determination that there was subject matter jurisdiction are misdirected. The employees' first two arguments are that the indemnification claims are barred since (1) the claims were contingent and (2) timely proof of claim was not made. As the district court pointed out, however, the question whether the claims are barred is one for none other than the bankruptcy court.

The employees' third argument is that the Aloes' indemnification claims represent a collusive attempt to manufacture jurisdiction and are therefore barred under the collusive joinder provision of 28 U.S.C. § 1359. This provision states:

A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.

The district court pointed out that it was unclear whether Section 1359 even applied to federal question cases, i.e., non-diversity cases. But whether or not it applied, the court held that the "collusive joinder" claim failed because it was not supported by any evidence. We agree. The employees state in conclusory fashion that the Aloes' indemnity claim against Shenango was pretextual and was asserted solely in order to create federal jurisdiction. The only explanation the employees give for their conclusion is that "Shenango has never defended against [the Aloes'] third party claims for indemnity." But we do not see why Shenango should necessarily have defended

9

against the Aloes' claims if the claims were valid –– as they appear to be under Shenango's by-laws.  In sum, the employees have failed to show error in the district court's analysis of subject matter jurisdiction.  Cf. Sterling Nat'l Mortgage Co., v. Mortgage Corner, Inc., 97 F.3d 39, 44 (3d Cir. 1996) (conclusory allegations are not sufficient to survive summary judgment).

B. Removal

An issue not raised by the employees, but raised by us, sua sponte, is whether, notwithstanding the existence of subject matter jurisdiction, removal was proper under the general removal provision, 28 U.S.C. § 1441(b).  This provision states:

> Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.  Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

The Aloes, as defendants, do not contend that they are citizens of a state other than the one in which the action was brought, i.e., Pennsylvania.  Accordingly, if 28 U.S.C. § 1441(b) applies to this case[6] removal was proper only if the action is

_____

6.  As previously noted, this action was removed, not under 28 U.S.C. § 1441, but under 28 U.S.C. § 1452, which specifically authorizes the removal of most claims or actions over which the district court has subject matter jurisdiction under 28 U.S.C. § 1334.  In Pacor, we said that "sections 1441–1447 were never meant to be read into the procedures for bankruptcy removals." 743 F.2d at 992.  However, in Things Remembered, Inc., v. Petrarca, 116 S. Ct. 494, 497 (1995), the Supreme Court held that the procedural requirements under 28 U.S.C. § 1447(d) apply to a case that is removed under the special bankruptcy removal provision, 28 U.S.C. § 1452, that the defendants utilized here. See also Donaldson, 104 F.3d at 553 n.1.  Consequently, if the

10

one that "aris[es] under" federal law within the meaning of that provision.

Whether this is so is an interesting question. On the one hand, the employees' action plainly asserted a claim under state law (namely, the Pennsylvania WPCL), and federal law appears to have been implicated in the form of a defense to the state law claim. Cf. Robert A. Ragazzo, Reconsidering the Artful Pleading Doctrine, 44 Hastings L. J. 273, 275-76 (1993) (defendant cannot create federal question jurisdiction by pleading federal defenses to state claims alleged in state court). On the other hand, if we are correct in holding that the district court had subject matter jurisdiction under 28 U.S.C. § 1334(b) -- and we believe that binding precedent plainly dictates that conclusion -- and if the jurisdictional grant set out in 28 U.S.C. § 1334(b) is based on the "arising under" jurisdiction of Article III of the Constitution, it must follow that the

(..continued)
reasoning of Things Remembered applies to 28 U.S.C. § 1441(b), as well as 28 U.S.C. § 1447(d), the former provision applies in this case.

  To read Sections 1452 and 1441(b) as working in conjunction would provide plaintiffs in "related to," but not "arising under," cases with greater control over the choice of forum than defendants. Cf. Richard H. Fallon, Jr., Daniel J. Meltzer and David L. Shapiro, The Federal Courts and the Federal System 1616 (1996) (noting, in the context of removal, that there are a number of federal statutes under which defendants are denied the choice of forum given to plaintiffs). Under such a system, a state law claim that was "related to," but not "arising under," a title 11 proceeding, could be brought by the plaintiff in a state court of the state in which the defendant was a citizen, and would not be removable, even though the case could have originally been brought in federal court. See 28 U.S.C. §§ 1441(b) & 1452.

11

employees' action is one that arises under federal law for constitutional purposes.

We need not, however, attempt to resolve the question whether the removal in this case was improper under 28 U.S.C. § 1441(b). The issue of improper removal was not raised at the time of the removal, and any claim was therefore waived. Where a case could have been originally filed in federal court but there is an irregularity in its removal from state court, that irregularity is waivable. See Korea Exch. Bank v. Trackwise Sales Corp., 66 F.3d 46, 50 (3d Cir. 1995). In other words, since this cause of action could have been brought originally in federal court, any defects in the removal of the case from state court were "procedural," as opposed to "jurisdictional," and were thus waivable. Id. As the Supreme Court said in Grubbs v. General Elec. Credit Corp., 405 U.S. 699 (1972):

> We have concluded that, whether or not the case was properly removed, the District Court did have jurisdiction of the parties at the time it entered judgment. Under such circumstances the validity of the removal procedure followed may not be raised for the first time on appeal.

Id. at 700; cf. Caterpillar Inc. v. Lewis, 117 S. Ct. 467, 475 (1996) (citing Grubb).

C. WPCL

The substantive issue in this case is whether the employees can sue the Aloes, as officers of Shenango, under the WPCL for Shenango's non-payment of certain pre-petition benefits that became due to the employees in the period after Shenango had

12

filed for bankruptcy.  The district court rejected the employees'

WPCL claim because the failure to pay benefits by Shenango

occurred after the bankruptcy petition was filed.  The court

reasoned that the failure to pay was caused by the Bankruptcy

Code's prohibition on Shenango's making such payments, and not by

the Aloes' voluntary choice to refrain from making them.

The WPCL provides, with respect to fringe benefits and
wage supplements, that

> [e]very employer who by agreement deducts union dues
> from employees' pay or agrees to pay or
> provide fringe benefits or wage supplements,
> must remit the deductions or pay or provide
> the fringe benefits or wage supplements, as
> required, within 10 days after such payments
> are required to be made to the union in the
> case of dues or to a trust or pooled fund, or
> within 10 days after such payments are
> required to be made directly to the employee,
> or within 60 days of the date when the proper
> claim was filed by the employee in situations
> where no required time for payment is
> specified.

43 Pa.C.S.A. § 260.3(b).

The WPCL further provides that

> [a]ny group of employees, labor organization or party
> to whom any type of wages is payable may
> institute actions provided under this act.

43 Pa.C.S.A. § 260.9a(a) (emphasis added).

The parties do not dispute that under the WPCL the top

management of a company can be held liable for wages that are

owed by the company.  The dispute here is over whether the

employees' claim is for benefits that were "due and payable"

under the WPCL.  The district court held that they were not since

federal bankruptcy law operated to prevent these benefits (which

13

came due after Shenango filed for bankruptcy) from being "due and payable." We agree.

The liability of corporate managers under the WPCL is a "contingent" liability, i.e., it is contingent on the corporation's failure to pay debts that it owes. See Laborers Combined Funds of W. Pa. v. Mattei, 518 A.2d 1296, 1300 (1986) ("the only apparent purpose [of holding managers liable for wages and benefits not paid fully by the company] was to subject these persons to liability in the event that a corporation failed to make wage payments") (emphasis added); accord Carpenters, 727 F.2d at 282–83. Once a corporation files a Chapter 11 petition, however, it is obligated to pay wages and benefits only to the extent required by the bankruptcy workout. Cf. In re Ribs–R–Us, Inc., 828 F.2d 199, 203 (3d Cir. 1987) (describing the effect on a debtor of the filing of a petition in Chapter 11). Hence, when a corporation under Chapter 11 fails to make payments that the Bankruptcy Code does not permit, the contingency needed to trigger the liability of corporate managers under the Pennsylvania WPCL never occurs. Here, Shenango was current on all of its payments in the pre-petition period. The employees' claims are for amounts that technically came due in the post–petition period. Since the corporation was not permitted by law to pay these claims in the post-petition period, the contingency of the amounts becoming "due and payable" under the WPCL did not occur, and hence the managers were not personally liable.

14

This conclusion is consistent with the goals underlying the WPCL. Pennsylvania's purpose in holding the agents and officers of a corporation liable for unpaid wages and benefits is to give those agents and officers an incentive to pay wages and benefits while the corporation still has the resources to do so. See Mohney v. McClure, 568 A.2d 682, 685 (1990), aff'd per curiam, 604 A.2d 1021 (1992). Put differently, the WPCL seeks to deter corporate managers from diverting corporate funds that are meant to go towards paying wages and benefits. For example, one could imagine a situation in which a firm is under the threat of bankruptcy and the managers' primary concern is saving their jobs (i.e., keeping the company out of bankruptcy) as opposed to paying the employees from the available funds. In such a situation, managers might be tempted not to use available funds to pay wages and benefits owed to the employees. Instead, they might be tempted to employ the funds in a high risk gamble that, if successful, might prevent bankruptcy and hence save the managers' jobs but that most likely will fail and result in a loss of the funds. See, e.g., Susan Rose-Ackerman, Risk Taking and Ruin: Bankruptcy and Investment Choice, 20 J. Legal Stud. 277 (1991); cf. Robert K. Rasmussen, The Ex Ante Effects of Bankruptcy Reform on Investment Incentives, 72 Wash. U. L. Q. 1159, 1162 & n.16 (1994).

Given that the purpose of the WPCL is to deter managers from strategically diverting company resources away from the payment of wages and benefits, it makes sense for the WPCL to

15

apply in only those contexts in which the managers have room to behave strategically. Indeed, the courts have applied the WPCL in precisely this manner. In Mohney, the court refused to hold a corporate secretary liable for unpaid wages and benefits, where the secretary, who earned no more than a small retainer, had no role in the corporate decision making processes. 568 A.2d at 686 (liability under the WPCL is premised on the person being held liable being an "active decision mak[er]" in the context of deciding not to pay the employees); see also Central Pa. Teamsters Pension Fund v. Burten, 634 F. Supp. 128, 131 (E.D. Pa. 1986) (absent some indication that the defendant exercised a policy-making function in the company, he could not be held liable under the WPCL).

The logic of Mohney applies to this case.[7] Shenango was current on its payments to the employees up to the point of filing for bankruptcy. Once Shenango filed for bankruptcy, however, management no longer had the power to choose not to use the corporation's funds to pay wages. Specifically, once Shenango went into bankruptcy, bankruptcy law compelled it to refrain from paying the employees' claims. In this context, it is easy to see that management was not in the position of an

_____

7. The WPCL is a penal statute. The narrow interpretation given to it by the Mohney court is consistent with Pennsylvania's rule of statutory interpretation that doubts about the reach of a penal provision are to be resolved in favor of a narrow construction. See 1 Pa.C.S.A. § 1928(b)(1) (penal provisions are to be strictly construed); cf. David L. Shapiro, Continuity and Change in Statutory Interpretation, 67 N.Y.U. L. Rev. 921, 935 (1992).

16

"active decision maker" vis-a-vis choosing not to pay employees

benefits that technically became due in the post-petition

period.[8]   Therefore, the WPCL did not come into play.[9]

_____

8.   This exception to the applicability of the WPCL is not an
attempt to incorporate a scienter requirement into the WPCL.  See
Mohney, 568 A.2d at 686.  We note, however, that there exists at
least one situation in which corporate officers are held
statutorily liable for the non-payment of debts owed by the
corporation and where this liability is premised on a
determination of willfulness.  The context is that of taxes, such
as withholding and social security taxes, that are required to be
deducted by employers from the wages paid to employees.  In this
context, Congress has imposed personal liability on any officer
or employee who "willfully fails to collect such tax, or
truthfully account for and pay over such tax, or willfully
attempts in any manner to evade or defeat any such tax or the
payment thereof." 26 U.S.C. 6672(a); Ribs-R-Us, 828 F.2d at 200.
 Part of the rationale underlying the imposition of such
liability was the recognition that "taxes collected by a
corporate employer on behalf of employees `can be a tempting
source of ready cash for a failing corporation beleaguered by its
creditors.'" Ribs-R-Us, 828 F.2d at 200 (quoting Slodov v. United
States, 436 U.S. 238, 243 (1978)).



9.   One might ask, as the dissent does, why this case is
different from an ordinary third-party guaranty of a debt, where
the purpose of the guaranty is to ensure that the creditor
receives complete and timely payment even if the primary debtor
goes into bankruptcy and avails itself of the automatic stay.
The reason for the difference is that the secondary liability of
managers under the WPCL attaches only when they are "active
decision makers."  In other words, their liability is not
automatic, but is premised on their being in a position to stop
the original non-payment.  This makes the WPCL manager liability
different from an ordinary contract guaranty.

        The dissent fears that this case will radically alter
the law applicable to all forms of contractual guaranties.  Our
decision here, however, is predicated solely on an interpretation
of Pennsylvania law on the WPCL.  It is predicated on the
existence of the "active decision maker" component of the WPCL; a
component provided by the Pennsylvania courts.  Unless private
parties agree to include such a component in their guaranties, we
fail to see how this decision will affect those contracts.

        Further, the dissent suggests that under the WPCL there
cannot be any doubt as to Pennsylvania's legislative intent to

17

The employees, however, argue that the district court's decision was inconsistent with the applicable case law. In particular, they point to Mohney and Adams v. Benjamin, 627 A.2d 1186 (1993). We disagree with the employees with respect to both cases.

In Mohney, the plaintiff was asserting claims for wages that allegedly had been accrued but were only partially paid at the time of filing for bankruptcy. 568 A.2d at 684. The employees read Mohney to hold that claims for wages that were accrued at the time of the filing for bankruptcy, but that did not come due until after the filing of the petition, were valid under the WPCL. We do not read Mohney to say any such thing. The language in Mohney to which the employees point is the

(..continued)
hold its corporate officers and directors liable for the unpaid wage and benefits debts of the corporation when the corporation itself is temporarily stayed, by operation of the Bankruptcy Code, from paying those debts. We disagree.

Corporate bankruptcies are not unusual events. When companies go into Chapter 11, it can take them substantial periods of time to emerge. During the period the corporation is in Chapter 11, it is stayed from paying its pre-petition debts. Under the dissent's interpretation of the WPCL, the officers and directors of Pennsylvania corporations would be personally liable for covering these unpaid wage and benefits debts during the entire period of the stay -- even though these were amounts that became due only after the bankruptcy petition was filed. The combination of (1) a corporation with a large workforce and (2) a lengthy bankruptcy workout, would result in staggering personal liability for the corporate officers. That, in turn, would produce a serious incentive for corporations to avoid locating in Pennsylvania. Without clear indication from the legislature that its intent was to impose such a regime, we, unlike the dissent, decline to read such an intent as obvious.

18

portion of the opinion in which the court articulates the claim made.  Id.  The court then, without holding whether or not the wage claims in and of themselves were valid under the WPCL, see id., rejected the plaintiff's claim since the defendant played no active decision-making role in the non-payment of the wages and benefits at issue. See id. at 686.

Adam is inapplicable because that case did not involve the question of what happens to wages and benefits that are accrued pre-petition, but come due only in the post-petition period.  627 A.2d at 1189-90.  Instead, in Adam, the wages and benefits at issue appear to have come due prior to the filing of the bankruptcy petition.  Id. at 1189.

III.

The decision of the district court is affirmed.

GREENBERG, Circuit Judge, concurring and dissenting.

I respectfully dissent in part in this case which is of enormous significance under bankruptcy law. As the majority points out, Shenango Corporation in December 1992 filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. A group of Shenango's former employees sought to recover specific sums of money for vacation and supplemental retirement benefits earned before the petition was filed but due in the post-petition period in an action under the Pennsylvania Wage Payment and Collection Law ("WPCL"), Pa. Stat. Ann. tit. 43, § 260.1, et seq. (West 1992). The employees brought the action against Mark and Andrew Aloe, officers of Shenango, in a Pennsylvania state court, but the Aloes removed the case to the district court which then referred it to the bankruptcy court. The Aloes then filed a third-party complaint against Shenango predicated on an indemnification agreement. The bankruptcy court granted the Aloes and Shenango summary judgment against the employees' claims, and the district court affirmed. The employees then appealed to this court.

The majority makes a comprehensive analysis upholding the bankruptcy court's exercise of subject matter jurisdiction, and I join this portion of its opinion. The majority then defines the "substantive issue" as "whether the employees can sue the Aloes, as officers of Shenango, under the WPCL for Shenango's non-payment of certain pre-petition benefits that became due to the employees in the period after Shenango had filed for bankruptcy." Typescript at 13. The majority points

20

out that employers must pay "fringe benefits and wage supplements," "as required" by the WPCL, and that employees may institute actions to collect such items if they are "payable." Id. at 14. The majority recognizes that the top management of a company can be liable under the WPCL but characterizes their liability as being "contingent on the corporation's failure to pay debts that it owes." Id. at 14. It then indicates that once the corporation files a petition under Chapter 11, "it is obligated to pay wages and benefits only to the extent required by the bankruptcy workout." Id. The majority then concludes that the bankruptcy and district courts reached the correct result because "when a corporation under Chapter 11 fails to make payments that the Bankruptcy Code does not permit, the contingency needed to trigger the liability of corporate managers under the Pennsylvania WPCL never occurs." Id. at 15.

The majority contends that its result is consistent with the goals underlying the WPCL. It reasons that Pennsylvania law holds agents and officers liable "to give [them] an incentive to pay wages and benefits while the corporation still has the resources to do so," typescript at 15, citing Mohney v. McClure, 568 A.2d 682, 685 (Pa. Super. Ct. 1990), aff'd per curiam, 604 A.2d 1021 (Pa. 1992). It then concludes that "[g]iven that the purpose of the WPCL is to deter managers from strategically diverting company resources away from the payment of wages and benefits, it makes sense for the WPCL to apply in only those contexts in which the managers have room to behave strategically." Typescript at 16. The majority supports this

21

conclusion by citing Mohney v. McClure and Central Pa. Teamsters Pension Fund v. Burten, 634 F. Supp. 128, 131 (E.D. Pa. 1986), for the proposition that only decision makers in the corporation can be liable under the WPCL.

According to the majority, the logic of Mohney applies here because "[o]nce Shenango filed for bankruptcy . . . management no longer had the power to choose not to use [its] funds to pay wages [because] bankruptcy law compelled it to refrain from paying the employees' claims." Typescript at 17. It thus concludes that "the WPCL did not come into play." Id. at 18.

I reject the foregoing analysis. Under the WPCL, the definition of employer encompasses "every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth." Pa. Stat. Ann. tit. 43, § 260.2a. For clarity, in applying this definition throughout this opinion I distinguish "statutory employer(s)" from "conventional employer(s)." Under the facts of this case, the corporation, Shenango, was the employer in the conventional sense; that is, the employer who actually paid wages and benefits to the employees (when such payments were made). Under the WPCL, however, both a corporation and its agents and officers are deemed "employers"; I call the agents and officers "statutory employers."

For purposes of these proceedings, there is no doubt but that the Aloes are agents or officers of Shenango and

22

are thus the employees' statutory employers.  In fact, the bankruptcy court said as much for it indicated that "[a]bsent bankruptcy, the Aloes, in their positions as officers of Shenango, would have been liable for claimed amounts pursuant to" the WPCL.  Indeed, the majority does not suggest otherwise.  Thus, in analyzing this case we undoubtedly must start from the premise that had there been no bankruptcy and Shenango had not made the payments, the Aloes would be liable under state law; again the majority does not suggest otherwise.

The majority characterizes agents' and officers' liability as a  "contingent" liability which comes into play when the corporation does not make the payments it owes.  I do not believe that the majority uses the term "contingent" in a technical or legal sense for the WPCL requires that "[e]very employer . . . must remit the deductions or pay or provide the fringe benefits or wage supplements" as required by the WPCL.  Id § 260.3(b).  Inasmuch as the Aloes are employers, their responsibility under the WPCL was as primary as that of Shenango.  Yet, as a practical matter, I have no quarrel with the characterization of their liability as "contingent"; undoubtedly in the ordinary situation, the corporation, or conventional employer, pays the benefits; the liability of its agents or officers as statutory employers is significant only when the conventional employer does not make those payments.

But whether we characterize the Aloes' liability as contingent or primary makes no difference.  There cannot be the slightest doubt but that the legislature contemplated that if

23

the corporate employer, i.e., the conventional employer, did not make the payments required under the WPCL, then the decision-making agents and officers as statutory employers would be liable for them. This liability cannot be avoided by the majority's conclusion that the agents and officers should not be liable because the corporation lawfully could not make the payments. Nothing in the WPCL even remotely can be read to excuse the agents and officers as statutory employers, in this case the Aloes, from liability merely because the conventional employer, in this case, Shenango, cannot make the payments. Nor does the WPCL distinguish a corporation's inability to make payments by reason of operation of law from its inability to make payments because it does not have the money to do so.

In fact, whether an agent's or officer's liability is viewed as primary or contingent, when the corporation as the conventional employer does not make the payments required by the WPCL, the parties confront the exact circumstance in which the legislature contemplated that the employees could hold the agents or officers as statutory employers liable. Nothing could be clearer for, as we explained in Carpenters Health and Welfare Fund v. Kenneth R. Ambrose, Inc., 727 F.2d 279, 282 (3d Cir. 1983) (internal quotation marks omitted), "the [legislature's] only apparent purpose [for defining an agent or officer as an employer] was to subject these persons to liability in the event that a corporation or similar entity failed to make wage payments." I cannot join an opinion which excuses the agents and officers from liability at the exact time when it is important

24

that they be liable because the legislature cannot possibly have intended such a result.

I also point out that a decision-making agent's or officer's liability for payments due under the WPCL is not dependent on a showing of his or her culpability or scienter. As the Pennsylvania Superior Court explained in Laborers Combined Funds v. Mattei, 518 A.2d 1296, 1300-01 (Pa. Super. Ct. 1986) (emphasis in original), "[o]f those courts which have had occasion to rule on the personal liability of corporate officers in the face of a corporation's failure to make its required contributions to various union funds, as provided for in their collective bargaining agreement, all have, without exception, held the officer(s) of the corporation personally liable, and they did so without reference to any proof of culpability or scienter as a sine qua non to establishing a contravention of the Act in a civil suit." So there you have it. If, as seems to be the case, the Aloes were the decision makers, they are liable for the amounts due under the WPCL and the case should be remanded to the bankruptcy court for further proceedings.

I respectfully suggest that the majority's contrary points are unavailing. It points out that the imposition of agent or officer liability seeks to deter the corporate agents and officers from diverting to another purpose "funds that are meant to go towards paying wages and benefits." Typescript at 16. I certainly agree with that proposition, yet the fact that an agent or officer who diverts funds may be liable under the WPCL does not mean that an agent or officer cannot be

25

liable without diverting funds.  Laborers Combined Funds makes this point clear for in that case even though a bookkeeper embezzled the money that should have been used to satisfy the obligations under the WPCL, the officers were liable because their liability was not dependent on their "culpability or scienter."  We should consider, too, the case of a corporation which never generated income, i.e., a new business, but which incurred obligations under the WPCL.  In that case there would be no funds to divert, yet surely the decision-making agents or officers would be liable.

The bottom line on the diversion theory is this: there is nothing in the WPCL itself or in the case law to support a conclusion that an agent or officer can be liable only if he or she diverts funds that should have been applied to obligations due under the WPCL.  The WPCL is not a trust fund statute imposing liability only when the agent or officer has misapplied the res, and thus it should not be treated as a trust fund statute.  Yet by predicating liability on the diversion theory, the majority treats the WPCL as a trust fund statute.  In fact, the WPCL establishes employers' liability without regard for trust fund concepts and, as we must on this appeal treat the Aloes as employers, they are potentially liable and were not entitled to summary judgment.

The majority contends that inasmuch as the purpose of the WPCL is "to deter managers from strategically diverting company resources away from the payment of wages and benefits, it makes sense for the WPCL to apply in only those contexts in which

26

the managers have room to behave strategically." Typescript at 16-17. Here Shenango's bankruptcy deprived them of that room. Yet the cases the majority cites on the point do not support its conclusion in this case for they merely establish that corporate agents who are not corporate decision makers are not liable under the WPCL because they are not statutory employers. See Mohney, 568 A.2d 682, and Central Pa. Teamsters Pension Fund, 634 F. Supp. 128. The immunity of the officers in those cases stemmed from the circumstance that they were not decision makers in the corporation, not from their failure or inability to have exercised control over the "decision" not to make the required payments. These cases are not relevant to the issue at hand which is whether an agent or officer who is a statutory employer, and who by reason of a bankruptcy loses his or her freedom to apply the corporate assets strategically, nevertheless remains liable under the WPCL.

At the outset of this dissent, I said that this case is of enormous significance to bankruptcy law. I will now explain why. The principles involved in this case are applicable in any case in which a person has guaranteed a debt of a bankrupt corporation. (I use the term "guaranteed" broadly to include co-obligors, endorsers, and guarantors in situations in which, as between the debtors, the obligation to pay is primarily on the bankrupt.) The majority seeks to distinguish this case "from an ordinary third-party guaranty of a debt," typescript at 18 n.7, and indicates that it intends to predicate its opinion solely on an interpretation of the Pennsylvania law as set forth in the

27

WPCL. Thus, it believes that this case should not have implications in other contexts.

I believe, however, that this case is not distinguishable from a case involving an ordinary guaranty. The majority says that the liability of agents and officers under the WPCL "is not automatic," but rather accrues only when the officers exercise decision-making authority with respect to the challenged nonpayment. Transcript at 18 n.7. However, for statutory employers the liability arises by operation of law, and thus to that extent it is indeed automatic. Liability under the WPCL is not dependent on the circumstances surrounding or the causes of the nonpayment, whether external to or intrinsic within the statutory employers. Thus, just like an ordinary guaranty, the liability of agents and officers under the WPCL is "automatic." Furthermore, in the case of an ordinary guaranty, just as here, the creditors call on the guarantor to pay because the corporation cannot.

The majority's attempt to limit this case to an application of the WPCL fails for the additional reason that there is not even a hint in that Act that the liability of a statutory employer is affected by the bankruptcy of the corporate or conventional employer. If a court can create a bankruptcy exception to the statutory employers' liability here, persons who have made other types of guarantees will seek similar relief. Accordingly, this case opens a door which will be hard to close. But even if somehow the impact of this case could be limited to situations under the WPCL, I nevertheless think that the majority

28

is reaching the wrong result in this case which in itself is of great importance.

I close with one final point. The majority apparently believes that practical considerations require it to reach its result. It points out that "[c]orporate bankruptcies are not unusual events" and that corporations in Chapter 11 proceedings are stayed from paying prepetition debts. It thus indicates that an application of the WPCL in a situation such as this may result in imposition of "staggering personal liability" on corporate officers, thereby creating an incentive for corporations to avoid locating in Pennsylvania. Typescript at 18-19 n.8. The problem with this point is that we are judges, not legislators, and it is beyond our power to rewrite the WPCL so as to create a bankruptcy exception in favor of statutory employers merely because we believe that it would be good for business to do so.

The majority does not point to a bankruptcy exception in the WPCL to support its conclusion that the "staggering personal liability" should not be imposed for the very good reason that the WPCL does not include any such provision. Rather, the WPCL imposes liability on statutory employers without exception under the WPCL. Thus, even under the majority's view that its result is consistent with the policy of the WPCL, which I reject, the majority should not read a bankruptcy exception into that act. Rather, it should heed the point we made so recently in In re Barshak, 106 F.3d 501, 506 (3d Cir. 1997), that we "are not free to ignore the clear language of

a Pennsylvania statute merely because by rewriting the statute we arguably would act consistently with a legislative policy."

In fact, the majority's creation of a bankruptcy exception in the WPCL has frustrated the purpose of the Act because relegating the employees to a remedy against the corporate employer means that they can recover only as provided in a plan of reorganization or, as I explain below, not recover at all. This relegation almost surely will mean that the employees will not receive the payments due under the WPCL. Thus, I cannot understand why the majority suggests that this case merely involves a situation where the corporation is "temporarily stayed, by operation of the Bankruptcy Code," typescript at 18-19 n.8, from paying the employees' claims. In fact, the employees' claims against Shenango largely have been discharged. Shenango itself makes this point clear for it explains in its brief that "the Former Employees hold allowed unsecured claims against Shenango's estate and pursuant to the Plan the claims were discharged except to the extent that they will receive pro rata payments under the confirmed Plan of reorganization in satisfaction of the Wage Claims." Br. at 3.

I also point out that there is no principled way to distinguish between large corporations in which claims against the statutory employers could be "staggering" and small one-person corporations. Thus, according to the logic of the majority opinion, if a small corporation owned and operated by a single person receives a discharge under Chapter 7 of the Bankruptcy Code, even if, as is likely, the owner is a statutory

employer under the WPCL and is not in bankruptcy personally, he or she will be discharged from liability under the WPCL.  After all, the Bankruptcy Code restrains a corporation being liquidated under Chapter 7 from using its funds as it sees fit just as its restrains a corporation reorganizing under Chapter 11 in its use of its funds.  In such a case under Chapter 7 the employees may receive nothing on their WPCL claims even though the statutory employer has substantial assets.  I cannot conceive that the legislature intended such a result.

For the foregoing reasons, I respectfully concur in part and dissent in part.