**STEEL WORKERS PENSION TRUST,**

v.

**CITIGROUP, INC., et al.**

**Civil Action No. 03–CV–2171.**

United States District Court, E.D. Pennsylvania.

July 17, 2003.

Spencer A. Burkholz, Thomas E. Egler, William S. Lerach, Milberg, Weiss, Bershad, Hynes & Lerach, LLP, San Diego, CA, Peter V. Marks, Sr., Philadelphia, PA, for Plaintiffs.

Cyrus Amir–Mokri, Jay B. Kasner, Skadden, Arps, Slate, Meagher & Flom, LLP, New York City, David W. Engstrom, John G. Harkins, Jr., Harkins Cunningham, Philadelphia, PA, Eliot Lauer, Curtis, Mallett–Prevost, Colt & Mosle, New York City, Jason D. Russell, Skadden, Arps, Slate, Meagher & Flom, LLP, Los Angeles, CA, for Defendants.

## MEMORANDUM AND ORDER

SAVAGE, District Judge.

In this securities case removed from the state court pursuant to the bankruptcy removal statute, 28 U.S.C. § 1452(a), we must determine whether it is related to the bankruptcy of a non-party with whom the defendants have an indemnification agreement. If it is not related, it must be remanded.

Because this action does not trigger the bankrupt debtor's liability under the agreement, any potential indemnification claims have not accrued. Until they do, if ever, the prosecution of this lawsuit does not effect the bankruptcy. Therefore, the case shall be remanded to the state court.

### Background

In early 2001, the Steel Workers Pension Trust ("plaintiff") purchased five million dollars of WorldCom, Inc. ("WorldCom") bonds. On July 21, 2002, amid revelations that WorldCom had manipulated its financial statements, the Securities Exchange Commission had filed a civil action against the company, criminal charges were being filed against its officers, and a Congressional inquiry was opened, WorldCom declared bankruptcy.[1] The bonds became worthless.

The plaintiff brought this action under Sections 11 and 12(a)(2) of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77l(a)(2) ("the Act"), in the Pennsylvania Court of Common Pleas seeking money damages for the devaluation of the WorldCom bonds which had been underwritten by defendants Citigroup, Inc., J.P. Morgan

---

1. WorldCom filed its voluntary petition for Chapter 11 bankruptcy relief in the United States Bankruptcy Court for the Southern District of New York, *In re WorldCom, Inc.,* Case No. 02–13533–AJG.

Chase & Co., Lehman Brothers Holdings, Inc., Credit Suisse Group, and Nations-Banc Montgomery Securities LLC (collectively "underwriter defendants"). The complaint alleges that these defendants were negligent for failing to conduct an adequate due diligence investigation of WorldCom's financial statements and condition before underwriting and offering WorldCom's bonds and securities for sale. The plaintiff also sued defendant Arthur Andersen LLP ("Andersen"), an accounting firm which had certified WorldCom's financial documents. WorldCom is not a party to the action.

The plaintiff, as master of the complaint, states a cause of action under the 1933 Securities Act because it permits individual actions against the underwriters and provides for concurrent federal and state jurisdiction.[2] To avoid the inevitable delay in prosecuting a claim against WorldCom in the bankruptcy court, the plaintiff deliberately chose not to sue WorldCom. Instead, the plaintiff elected to pursue claims in the state court for negligence and strict liability directly against the underwriters who have the ability to pay an award of damages.[3]

The underwriter defendants removed the case pursuant to 28 U.S.C. § 1452(a), the bankruptcy removal statute. They later filed a motion with the Judicial Panel on Multidistrict Litigation ("MDL") requesting transfer to the Southern District of New York for consolidation with a multitude of securities actions involving WorldCom's bankruptcy, *In re WorldCom, Inc., Securities and "ERISA" Litigation,* No. MDL–1487.[4] Alternatively, they request that a stay be entered until MDL rules on the transfer motion.

The plaintiff filed a timely motion to remand on April 14, 2003. On May 30, 2003, the MDL panel entered a "Conditional Transfer Order (CTO–9)" transferring this litigation to the United States District Court for the Southern District of New York for consolidation under MDL–1487. Nevertheless, pursuant to Panel Rule 1.5, 199 F.R.D. 425, 427 (2001), this Court retains jurisdiction to entertain the pending motion.

The plaintiff principally argues that: (1) Section 22(a) of the Act prohibits the removal of a case brought by an individual in state court under the Act; (2) Third Circuit precedent precludes the exercise of "related to" jurisdiction where the defendants' indemnification or contribution claims are contingent upon the outcome of another lawsuit; (3) there are sufficient grounds for permissive abstention under 28 U.S.C. § 1334(c); and, (4) equitable grounds compel remand under 28 U.S.C. § 1452(b).

The underwriter defendants, stressing the expansive sweep of bankruptcy jurisdiction, contend that the existence of an indemnification agreement between a defendant and a non-party debtor, whether it applies immediately or at some later time, supplies the basis for "related to" jurisdic-

---

**2.** Congressional amendments to the Act, passed in November 1998, placed class actions within the exclusive jurisdiction of the federal courts. 15 U.S.C. §§ 77p(b), 77v(a). Individual actions can still be brought in either federal or state court. 15 U.S.C. § 77v(a).

**3.** Plaintiff does not assert claims for fraud or intentional misconduct though there are alle-

gations in the complaint supporting such charges.

**4.** Andersen consented to the removal. *Notice of Removal* at Ex. R. It did not participate in the presentation of the motions and responses filed by the underwriter defendants or in the oral argument. Nevertheless, we assume Anderson joins in the underwriter defendants' arguments.

tion. They challenge the plaintiff's argument that the Act bars removal of claims brought in state court by individual plaintiffs, contending that the broad removal language in § 1452(a) trumps the narrow prohibition against removal contained in § 22(a) of the Act. They also argue that neither abstention nor equitable remand is appropriate because the exercise of federal jurisdiction would not infringe on state sovereignty and would promote judicial economy and efficiency.

The plaintiff makes a compelling argument why the court should remand on equitable grounds under § 1452(b). Although we are inclined to agree, it is unnecessary to address this issue because our remanding the action under § 1447(d) is dispositive. Similarly, because we remand this matter for lack of "related to" jurisdiction, we do not consider the prohibition against removal contained in the Act, 15 U.S.C. § 77v(a), nor the abstention argument.

### "Related to" Jurisdiction

An action "arising under" the Bankruptcy Code, or "arising in" or "related to" a bankruptcy may be removed. 28 U.S.C. §§ 1334(b), 1452(a). "Arising under" refers to those causes of action specifically created by the bankruptcy statute. "Arising in" cases involve the administration of the bankruptcy estate. *See, e.g., In re Marcus Hook Dev. Park, Inc.,* 943 F.2d 261, 267 (3d Cir.1991). A "related to" case does not invoke a substantive right under the bankruptcy statute and exists outside of bankruptcy, but its outcome could effect the bankruptcy estate. *In re Guild and Gallery Plus, Inc.,* 72 F.3d 1171, 1178 (3d Cir.1996).

The plaintiff's cause of action is not founded on the bankruptcy statute. Nor is WorldCom, the bankruptcy debtor, a party to this action. Consequently, this action does not arise under or in bankruptcy.

Hence, our task is to determine whether this litigation is related to WorldCom's bankruptcy within the meaning of § 1334(b).

■ Factual issues common to a civil action and a bankruptcy controversy do not necessarily invoke "related to" jurisdiction. There must be a connection between the purported related case and the bankruptcy case. That connection is made when the outcome of the case "could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984). Thus, "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." *Id.*

Mere potential impact upon the debtor's estate is insufficient. Contingent liability will not suffice. The necessity of future action to fix the debtor's liability after resolution of the pending lawsuit precludes the exercise of "related to" jurisdiction.

■ An indemnification agreement between a defendant and a non-party bankrupt debtor does not automatically supply the nexus necessary for the exercise of "related to" jurisdiction. Only when the right to indemnification is clearly established and accrues upon the filing of the civil action is the proceeding related to the bankruptcy case. Where the right to indemnification is contingent on a factual finding in the action not involving the bankruptcy debtor and requires the commencement of another lawsuit to establish that right, there is no effect on the bankrupt estate. *In re Federal–Mogul Global, Inc.,* 300 F.3d 368, 382 (3d Cir.2002).

The test for determining "related to" bankruptcy jurisdiction in the context of

an indemnification or contribution claim was articulated in *Pacor, Inc. v. Higgins*, 743 F.2d 984. In *Pacor*, the plaintiffs had filed suit against Pacor in the state court seeking damages for asbestos exposure. *Id.* at 985. Pacor then filed a third party complaint against the manufacturer of the asbestos, Johns–Manville Corporation ("Manville"), which was in bankruptcy. *Id.* Invoking the bankruptcy removal statute, Pacor removed the case to federal court for consolidation with the other pending claims against Manville. *Id.*

The court rejected Pacor's argument that the underlying suit would impact the Manville bankruptcy estate. It observed that "*without* a judgment for plaintiff Higgins in that action, there could never be a third party indemnification claim against Manville" and Pacor would "still be obligated to bring an entirely separate proceeding to receive indemnification" in the event the plaintiffs secured a judgment against Pacor. *Id.* at 995 (emphasis in original).

The Third Circuit, in remanding the matter, determined that:

> [T]he primary action between Higgins and Pacor would have no effect on the Manville bankruptcy estate, and therefore is not "related to" bankruptcy within the meaning of [the statutory predecessor to § 1334(b)]. At best, it is a mere precursor to the potential third party claim for indemnification by Pacor against Manville. Yet the outcome of the Higgins–Pacor action would in no way bind Manville, in that it could not determine any rights, liabilities, or course of action of the debtor. Since Manville is not a party to the Higgins–

Pacor action, it could not be bound by *res judicata* or collateral estoppel.

743 F.2d at 995.

■ *Pacor* has been widely accepted as establishing the test for "related to" jurisdiction. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n. 6, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). We acknowledge that some circuits, despite professed reliance on *Pacor*, have found "related to" jurisdiction even where a separate proceeding was required to establish rights under an indemnity agreement. *See, e.g., In re Celotex Corp.*, 124 F.3d 619, 626–27 (4th Cir. 1997); *In re Dow Corning Corp.*, 86 F.3d 482, 491–94 (6th Cir.1996).[5] Nevertheless, in light of the Third Circuit's recent declaration that *Pacor* "clearly remains good law in this circuit," we must apply the *Pacor* standard which precludes "related to" jurisdiction where a later lawsuit is necessary to fix indemnification liability on the bankrupt estate. *Federal–Mogul*, 300 F.3d at 381–82.

Contrary to the underwriter defendants' argument, the Third Circuit did not imply in *Pacor*, when it mentioned *In re Brentano's*, 27 B.R. 90 (Bankr.S.D.N.Y.1983), that an indemnification agreement instantly gives rise to "related to" jurisdiction. Nor did it so hold in *Belcufine v. Aloe*, 112 F.3d 633 (3d Cir.1997).

In both *Brentano's* and *Belcufine*, the right to indemnification accrued immediately upon the filing of the lawsuit against the party entitled to indemnification from the bankruptcy estate. The outcome in both instances, unlike here where the plaintiff's claim is minuscule in the enormity of the WorldCom bankruptcy, would have had a significant impact upon any reorganization plans.

---

**5.** The defendants urge that we follow *In re WorldCom, Inc. Securities Litigation*, 293 B.R. 308, 317–18 (S.D.N.Y.2003), where the court found that application of *Pacor* compels a finding of "related to" jurisdiction. While the facts of *In re WorldCom* may be substantially similar to this case, we are bound by Third Circuit law which dictates a contrary result.

Neither of these elements was present in *Pacor*. Additional litigation was necessary to determine the parties' responsibilities under the indemnification agreement. The plaintiffs were not creditors of the debtor nor had they filed suit against the debtor. *Id.* Thus, there could not have been any effect on the debtor's bankruptcy administration, and creditors could not have been effected until Pacor pursued its claim against the debtor in a separate lawsuit. *Id.*

If there was any doubt about the application of the *Pacor* test, it was dispelled in *Federal–Mogul* when the Third Court rejected the implication that indemnification agreements *a fortiori* established "related to" jurisdiction. 300 F.3d at 382. In *Federal–Mogul*, the court rejected the argument that a possible indemnification or contribution claim was "conceivable" as contemplated by *Pacor.* 300 F.3d at 381–82. In a clear endorsement of the *Pacor* holding, the court clarified what it meant by "conceivable" and reiterated the standard for "related to" jurisdiction:

> [The defendants] reading of the word "conceivable" ignores the precise holding of *Pacor* where, despite the seemingly broad language of the opinion, we found no "related to" jurisdiction for the Higgins lawsuit against Pacor because the outcome of that lawsuit could not result "in even a contingent claim" against the debtor (Manville); rather, "an entirely separate proceeding to receive indemnification" would have been required. The test articulated in *Pacor* for whether a lawsuit could "conceivably" have an effect on the bankruptcy

proceeding inquires whether the allegedly related lawsuit would affect the bankruptcy proceeding without the intervention of another lawsuit.

300 F.3d at 382 (quoting *Pacor*, 743 F.2d at 995).

The underwriter defendants suggest that the Third Circuit's discussion of *Pacor* in *Federal–Mogul* is meaningless dicta.[6] They erroneously rely on the intervening decision in *Belcufine v. Aloe*, 112 F.3d 633, to support their claim that the Third Circuit has explicitly held that written indemnification agreements provide the basis for "related to" jurisdiction. The underwriter defendants' interpretation of *Belcufine* is inconsistent with the *Pacor* holding and *Federal–Mogul's* affirmation of *Pacor. Belcufine* did not hold or suggest that whenever an indemnification agreement exists, there is a basis for "related to" jurisdiction. *Belcufine* reiterated *Pacor's* premise that a contractual indemnification provision could, but not necessarily, impact the bankruptcy estate, providing the basis for "related to" jurisdiction. 112 F.3d at 636.[7]

The indemnification provision in *Belcufine* provided for guaranteed reimbursement of "reasonable expenses, judgments, fines, or costs incurred in a legal proceeding" whenever the corporate officers, regardless of their liability, were sued. *Id.* at 635 n. 2. Like the agreement in *Brentano's*, the *Belcufine* by-laws automatically triggered liability without the need to file an additional lawsuit. Consequently, because the bankrupt debtor's indemnification liability was immediate, the bankrupt-

---

6. Though the issue in *Federal–Mogul* was whether an order denying a transfer motion and an order for remand were subject to appellate review, the court extensively discussed *Pacor* and "related to" jurisdiction. 300 F.3d at 372, 389.

7. Though the underwriter defendants place great emphasis on *Belcufine,* the Third Circuit did not mention or discuss *Belcufine* in its most recent examination of the *Pacor* test. *See Federal–Mogul,* 300 F.3d 368.

cy estate was effected and gave rise to "related to" jurisdiction.

In summary, not all indemnification agreements between a defendant in a civil action and a non-party bankrupt debtor create "related to" jurisdiction under § 1334(b). Only when the right to indemnification is established and is not contingent on the filing of a separate action is the case related to the bankruptcy proceeding. Thus, in performing the "related to" jurisdiction analysis, the indemnification contract must be examined.

### The Indemnification Agreement

In determining whether § 1452 "related to" jurisdiction exists in this context, *Pacor* and *Federal–Mogul* instruct us to ask two questions. First, is the debtor's liability automatically triggered when the purported related action against the party seeking indemnification is begun? Second, is a later lawsuit against the debtor, after the resolution of the action not involving the debtor, a prerequisite to a finding of indemnification? If the answer to the first question is no or the answer to the second is yes, "related to" jurisdiction does not exist.

■ We shall examine the indemnity agreement here to determine whether WorldCom's liability attached immediately upon the filing of this action or whether additional litigation will be required before the underwriter defendants can claim indemnification.

Under the contract, liability is not automatic. WorldCom agrees to indemnify the underwriter defendants only if certain conditions are satisfied. WorldCom's liability is contingent upon a finding that it made untrue statements of material facts in its registration statement or prospectus. *Underwriting Agreement* at 15 (Found at *Notice of Removal* at Ex. E). Conversely, if any of the underwriters provided it with untrue statements for use in the preparation of the registration statement or prospectus, WorldCom assumes no liability. *Id.* Consequently, even if WorldCom made false statements, which apparently it did, the underwriters still must prove they did not. At oral argument, counsel for the underwriter defendants identified the contingency when he stated, "if we prove we don't have any liability under the circumstances, we are certainly entitled to the indemnification for all costs and expenses . . . ." *Transcript June 17, 2003,* at 38. Thus, before an indemnification claim arises, there must be a fact finding process which results in a determination favorable to the defendants.

Whether the underwriter defendants can recover from WorldCom under the indemnification agreement will require further litigation. *Accord Retirement Systems of Alabama v. J.P. Morgan Chase & Co.,* 285 B.R. 519, 528–29 (M.D.Ala.2002). In any action brought by the underwriter defendants against WorldCom under the indemnification agreement, there must be findings of fact on issues that are beyond the scope of the plaintiff's complaint against the underwriter defendants. They then will be required to demonstrate that they were faultless before they can recover under the contract. In the meantime, this action has no effect on the WorldCom bankruptcy.

### Conclusion

The plaintiff is not suing WorldCom and the resolution of this lawsuit will not increase or decrease the size of WorldCom's bankruptcy estate. Nor will this action effect the administration of the WorldCom bankruptcy. Any indemnification claim asserted by the underwriter defendants against WorldCom "[has] not yet accrued and would require another lawsuit" before it could have an impact on WorldCom's bankruptcy. *Federal–Mogul,* 300 F.3d at

382. Thus, the plaintiff's claims against the underwriter defendants are not "related to" the WorldCom bankruptcy proceedings under 28 U.S.C. §§ 1334(b), and this matter will be remanded pursuant to 28 U.S.C. § 1447(d) to the state court from which it was removed.

### *ORDER*

AND NOW, this 17th day of July, 2003, upon consideration of the Underwriter Defendants' Motion to Stay Proceeding Pending Determination of the Multi–District Litigation Panel (Docket No. 5), the plaintiff's opposition to the motion to stay, the plaintiff's Motion to Remand This Action to the Philadelphia County Court of Common Pleas or to Abstain (Docket No. 8) and the defendants' opposition to plaintiff's motion to remand, and after oral argument, it is **ORDERED** as follows:

1. The defendants' motion to stay is **DENIED;**

2. The plaintiff's motion to remand is **GRANTED** and this matter is **REMANDED** to the Pennsylvania Court of Common Pleas of Philadelphia County, the state court from which it was removed, pursuant to 28 U.S.C. § 1447(d).

3. The Clerk is directed to return the state court record to the Prothonotary of the Pennsylvania Court of Common Pleas of Philadelphia County.