The **RETIREMENT SYSTEMS OF ALABAMA, consisting of the Employees Retirement System of Alabama and the Teachers Retirement System of Alabama, and as administrator of the Public Employees Individual Retirement Account Fund, pension funds of the State of Alabama, Plaintiffs,**

v.

**MERRILL LYNCH & CO., J.P. Morgan Chase & Co., Citigroup, Inc., Credit Suisse First Boston, Inc., Bank of America Corp., Arthur Andersen, L.L.P., Kenneth Lay, Jeffrey Skilling, Andrew Fastow, Defendants.**

No. Civ.A. 02–A–452–N.

United States District Court, M.D. Alabama, Northern Division.

May 31, 2002.

Thomas T. Gallion, III, Haskell, Slaughter, Young & Gallion, LLC, Montgomery, AL, John Michael Rediker, Thomas L. Krebs, J. Vernon Patrick, Jr., Patricia C. Diak, Jeffrey V. Havercroft, Matthew T. Franklin, Haskell, Slaughter, Young & Rediker, LLC, Birmingham, AL, for Plaintiffs.

Richard H. Gill, Copeland, Franco, Screws & Gill, P.A., Montgomery, AL, N. Lee Cooper, Luther M. Dorr, Jr., A. Inge Selden, III, Maynard, Cooper & Gale, P.C., Birmingham, AL, Herbert Washer, James Miller, John Carroll, Clifford, Chance, Rogers & Wells, New York City, John W. Scott, Huckaby, Scott & Dukes, PC, Birmingham, AL, for Merrill Lynch & Co.

Richard H. Gill, Copeland, Franco, Screws & Gill, P.A., Montgomery, AL, Crawford S. McGivaen, Jr., Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, AL, Bruce Angiolillo, Thomas C. Rice, Jonathan K. Youngblood, David J. Woll, Simpson, Thacher & Bartlett, New York City, John W. Scott, Huckaby, Scott & Dukes, PC, Birmingham, AL, for J.P. Morgan Chase & Co.

Richard H. Gill, Copeland, Franco, Screws & Gill, P.A., Montgomery, AL, W. Stancil Starnes, Bryan O. Balogh, Jay M. Ezelle, W. Michael Atchison, Starnes & Atchison, Birmingham, AL, Richard Rosen, Jessie Janowitz, Robert S. Smith, Brad S. Karp, Ronald P. Replogle, Paul Weiss, Rifkind, Wharton & Garrison, New York City, for Citigroup, Inc.

Lee H. Copeland, Richard H. Gill, George W. Walker, III, Copeland, Franco, Screws & Gill, P.A., Montgomery, AL, Richard Clary, Julia North, Melissa Baily,

Cravath, Swaine & Moore, New York City, John W. Scott, Huckaby, Scott & Dukes, PC, Birmingham, AL, for Credit Suisse First Boston, Inc.

Joseph C. Espy, III, James Flynn Mozingo, Melton, Espy, Williams & Hayes, P.C., Montgomery, AL, for Kenneth L. Lay.

Jeffrey K. Skilling, Houston, TX, pro se.

Andrew S. Fastow, Houston, TX, pro se.

Richard H. Gill, Copeland, Franco, Screws & Gill, P.A., Montgomery, AL, Warren B. Lightfoot, Ivan B. Cooper, Robin H. Graves, Lightfoot, Franklin & White, L.L.C., Birmingham, AL, Sharon Katz, David B. Loscano, Davis, Polk, & Wardwell, New York City, for Arthur Andersen, LLP.

Richard H. Gill, Copeland, Franco, Screws & Gill, P.A., Montgomery, AL, James C. Huckaby, Jr., John W. Scott, Huckaby, Scott & Dukes, PC, Birmingham, AL, Gregory Markel, Ronit Setton, Meredith Moss, Nancy I. Ruskin, Brobeck, Phleger & Harrison, New York City, for Bank of America Corp.

### MEMORANDUM OPINION

ALBRITTON, Chief Judge.

This cause is before the court on Plaintiffs' Motion to Remand or Abstain (Doc. # 5) and Defendants' Motion to Transfer Venue (Doc. # 2)[1]. This case was removed to this court under 28 U.S.C. § 1452[2] on April 22, 2002, from the Circuit Court of Montgomery County, Alabama.

For the reasons to be discussed, the court finds that Plaintiffs' Motion to Remand is due to be GRANTED. Defendants' Motion to Transfer and all other pending motions, with the exception of Defendant Kenneth Lay's Motion to Dismiss (Doc. # 12), are therefore due to be DENIED as moot. Because the case is being remanded, ruling on Lay's Motion to Dismiss will be left for the state court to consider.

### I. *REMAND STANDARD*

■ Federal courts are courts of limited jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Burns v. Windsor Insurance Co.*, 31 F.3d 1092, 1095 (1994); *Wymbs v. Republican State Executive Committee*, 719 F.2d 1072, 1076 (11th Cir.1983), *cert. denied*, 465 U.S. 1103, 104 S.Ct. 1600, 80 L.Ed.2d 131 (1984). They may only hear cases that they have been authorized to hear by the Constitution or the Congress of the United States. *See Kokkonen*, 511 U.S. at 377. The Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear. *See Burns*, 31 F.3d at 1095.

---

1. The court notes that Defendants Kenneth Lay, Jeffrey Skilling, and Andrew Fastow did not join in this Motion to Transfer, nor in the Notice of Removal (Doc. # 1). Also, Defendant Arthur Andersen L.L.P. did not join in the Notice of Removal, and furthermore, the Defendants' Motion to Transfer states that "[b]y joining in this motion, Arthur Andersen L.L.P. does not voluntarily consent or submit to the jurisdiction of the Bankruptcy Court." Motion to Trans. at 1 n. 1.

2. 28 U.S.C. § 1452(a) provides:
   A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.
   
   28 U.S.C. § 1334 provides, in pertinent part:
   (a) Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all cases under title 11.
   (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

## II. *BACKGROUND*

This case was precipitated by the recent collapse of Enron Corporation. The Retirement Systems of Alabama and its constituent pension funds (collectively "RSA") have sued a number of entities and persons allegedly involved in, and/or with culpable knowledge of, the events and transactions leading to Enron's filing for bankruptcy. The suit makes claims under the Securities Act of Alabama, *Ala. Code* § 8–6–1 *et seq.*, the Alabama statutory and common law of fraud, including *Ala.Code* § 6–5–100 *et seq.*, the state common law of unjust enrichment and constructive trust, and the Securities Act of 1933, specifically 15 U.S.C. § 771(a)(2).[3] The chapter 11 reorganization of Enron is currently pending in the bankruptcy court for the Southern District of New York. Notably, Enron Corporation is not a defendant in this case.

The rapid devaluation of Enron securities has given rise to a large number of lawsuits across the nation. On April 16, 2002, the Judicial Panel on Multidistrict Litigation designated the United States District Court for the Eastern District of Texas as the MDL court for the growing number of suits being filed against Enron and related entities under the nation's securities laws. At present, there are at least 54 suits consolidated in Judge Harmon's court for discovery and pre-trial motion practice. With refreshing candor, the Defendants admit that, although their attempt at removal is based on 28 U.S.C. § 1452, the "bankruptcy removal" statute, their ultimate aim is to have the case transferred to the MDL court in Texas.

At some point during the initial organizational stage of the proceedings in Texas, RSA moved the MDL court to grant it status as an "advisory plaintiff" in *Newby v. Enron Corporation, et al.*, one of the class actions pending before Judge Harmon. The court denied the motion on the basis that the law does not provide for an "advisory plaintiff" under Fed.R.Civ.P. 23. After the court denied the motion, RSA opted out of the pending class action in which it was a putative class member, although not a named plaintiff, and filed this case in the Circuit Court of Montgomery County, Alabama.

## III. *DISCUSSION*

Plaintiffs make a number of arguments in support their motion to remand or abstain, summarized as follows: (1) the removal of this case is procedurally defective, as some of the Defendants failed to join in the removal, (2) the court lacks subject matter jurisdiction under 28 U.S.C. § 1334(b), (3) RSA is an arm of the State of Alabama, and therefore partakes of the State's sovereign immunity, which bars the court from exercising removal jurisdiction over this case, (4) the court should abstain from hearing this case under the permissive abstention provision of § 1334, the mandatory abstention provision of § 1334, or the *Burford* or *Younger* abstention doctrines, and (5) the court should remand the case on equitable grounds pursuant to 28 U.S.C. § 1452(b).

Defendants counter that: (1) unanimity of defendants is not required for removals under § 1452, (2) this court does have "related to" bankruptcy jurisdiction over this case under § 1334(b), (3) sovereign immunity is not a bar to removal jurisdic-

---

**3.** Although RSA asserts this federal claim, removal under 28 U.S.C. § 1331 on the basis of federal question jurisdiction is proscribed by the Securities Act of 1933 itself: "[n]o case arising under this subchapter and brought in any state court of competent jurisdiction shall be removed to any court of the United States." 15 U.S.C. § 77v(a). Therefore, Defendants recognize that the only possible basis for removal is "related to" bankruptcy jurisdiction, pursuant to 28 U.S.C. § 1452.

tion where the State is a plaintiff, (4) mandatory abstention under § 1334, and the *Burford* and *Younger* doctrines, are not applicable to this case, and the factors to be considered under the § 1334 permissive abstention analysis do not weigh in favor of abstention, and (5) the facts and procedural posture of this case do not support remand under § 1452(b).

In support of their Motion to Transfer, the Defendants contend that the proper way for this court to proceed is to transfer the case under 28 U.S.C. § 1412 or § 1404, or both, to the United States District Court for the Southern District of New York, where the case would immediately be referred to the "home" bankruptcy court there. Once there, Defendants argue, a court with extensive knowledge of the Enron bankruptcy will take up any pending matters, including RSA's motion to remand, unless the case is first transferred from there to Texas by the MDL Panel as a "tag along" action. Defendants

cite several cases in support of this "conduit" procedure but concede that no authority compels this result.[4] In other words, Defendants appeal to what is essentially a prudential doctrine in furtherance of the efficiency policies intrinsic to bankruptcy law.[5]

After careful consideration of the parties' respective positions, the court finds that the circumstances of this case weigh in favor of first addressing the issues raised by the Motion to Remand.[6]

## A. The Rule of Unanimity and 28 U.S.C. § 1452(a)

Plaintiffs contend that the Defendants' removal in this case is procedurally defective because not all of the Defendants have joined in the Notice of Removal. Defendants counter that unanimity is not required for removals under 28 U.S.C. § 1452, and therefore any Defendant could have removed this entire case without the consent of the others. Accordingly, the

---

4. *See, e.g., In re Aztec Industries, Inc.,* 84 B.R. 464, 467 (Bankr.N.D.Ohio 1987) (holding that "Plaintiffs removal of the state court action to this District, in order to transfer the case to the Bankruptcy Court for the Northern District of Oklahoma, appears to be the correct procedural approach."). The court reasoned:

> The venue issues raised by the parties require an examination of both the case to be transferred and its relationship to the Aztec Bankruptcy case. Obviously, the Oklahoma Court is more familiar with the pending Bankruptcy case and what may be required for its efficient administration. In addition, the Court which would try the case can better evaluate all the interests involved, and determine its own expertise in the particular areas of the law which form the basis of the action, as well as its own scheduling and time constraints. This Court's speculation on these matters would not be an adequate substitute for a knowledgeable determination based upon the actual facts and circumstances.

*Id. But see Renaissance Cosmetics, Inc. v. Development Specialists Inc.,* 277 B.R. 5, 11

(S.D.N.Y.2002) ("courts faced with cross-motions for remand and change of venue [in bankruptcy removal cases] consider the remand motion first and, if remand is denied, turn to the motion for change of venue" and collecting cases).

5. On May 24, 2002 the MDL Panel entered a Conditional Transfer Order conditionally transferring this case, at the request of Defendants, directly from this court to the Southern District of Texas as a "tag along action." This conditional transfer, of course, does not affect pretrial proceedings in this court (Panel Rule 1.5, 199 F.R.D. 425, 427 (2001)), but it does call this argument into question.

6. Additionally, there is some question as to whether 28 U.S.C. § 1412 is applicable to the proposed transfer. Some courts have held that § 1412 does not apply to the transfer of "related to" bankruptcy cases. *See, e.g., Rumore v. Wamstad,* 2001 WL 1426680, *2, 2001 U.S.Dist. LEXIS 19064, *7 (E.D.La.2001). If § 1412 is inapplicable, the presumption in favor of the "home" bankruptcy court would not be present.

first issue for the court is whether 28 U.S.C. § 1452(a), similar to or by virtue of 28 U.S.C. § 1441(a), requires the joinder of all Defendants for the proper removal of a case based on "bankruptcy jurisdiction."

■ Generally, the removal of a case under 28 U.S.C. § 1441(a)[7] requires the joinder of all defendants. *See, e.g., Northern Illinois Gas Co. v. Airco Indus. Gases,* 676 F.2d 270, 272 (7th Cir.1982) ("As a general rule all defendants must join in a removal petition in order to effect removal."); *Newman v. Spectrum Stores, Inc.,* 109 F.Supp.2d 1342, 1345 (M.D.Ala.2000).[8] Unanimity among the defendants must be expressed to the court "within thirty days after receipt by the defendant ... of the copy of the initial pleading" containing the removable claim. 28 U.S.C. § 1446(b).

Conceding the lack of unanimity with respect to the removal of this case, Defendants nonetheless contend that, unlike § 1441, § 1452 does not require that all defendants in a case must join in a petition to properly effect a removal. Chief among the cases cited for this proposition is *Creasy v. Coleman Furniture Corp.,* 763 F.2d 656, 660 (4th Cir.1985) ("Under the bankruptcy removal statute ... any one party has the right to remove the state court action without the consent of the other parties").[9] The *Creasy* court cited no authority for this interpretation of 28 U.S.C. § 1452, and furthermore, the court forewent any analysis of the language of the statute. *See id.* In support of its holding, the court opined that "[o]therwise, the policy of having all related bankruptcy matters litigated in one forum would be unnecessarily restricted." *Id.* at 661 (no citation).

Some courts have relied on *Creasy* without undertaking any independent analysis of § 1452. *See, e.g., Plowman v. Bedford Fin. Corp.,* 218 B.R. 607, 616 (Bankr. N.D.Ala.1998); *In re Eagle Bend Dev.,* 61 B.R. 451, 456–57 (Bankr.W.D.La.1986). Other courts have simply asserted that § 1452 allows one defendant to remove an entire case, merely citing the statute as support. *See, e.g., Daleske v. Fairfield Communities, Inc.,* 17 F.3d 321 (10th Cir. 1994); *Roper v. American Health & Fire Ins. Co., Commercial Credit Corp.,* 203 B.R. 326, 331 n. 3 (Bankr.N.D.Ala.1996). In another case cited by Defendants, *In re*

---

**7.** 28 U.S.C. § 1441(a) provides, in pertinent part:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

**8.** There are three generally recognized exceptions to the rule of unanimity: (1) a co-defendant has not been served at the time the removal petition was filed, (2) a co-defendant is only a nominal defendant, and (3) the removed claim is separate and independent under 28 U.S.C. § 1441(c). *See, e.g., Jones v. Kremer,* 28 F.Supp.2d 1112, 1113 n. 2 (D.Minn.1998). Assuming the rule of unanimity is applicable to this case, the court notes that the only exception that colorably applies here is the first, as Kenneth Lay alleges in a motion to dismiss that he was not properly served. Defendants have not argued the exceptions, and in any event, the service-after-the-petition exception would not apply to the three other Defendants who have not joined in the removal (Fastow, Skilling, and Arthur Andersen).

**9.** Citing the court to 9 Am.Jur.2d Bankruptcy § 664, the Defendants argue that this proposition is "recognized as hornbook law." Def. Brief in Further Support (Doc. # 30) at 2. That section does indeed state that "[u]nder the bankruptcy removal statute, any one party has the right to remove a state court action without the consent of the other parties...." *Id.* The authority relied upon for this proposition, however, is the *Creasy* decision. *See id.*

*Lazar,* 237 F.3d 967, 973 n. 2 (9th Cir. 2001), the Ninth Circuit quoted its own prior opinion, stating that " 'those matters falling under the heading of concurrent jurisdiction (i.e., civil actions involving claims that arise under or in or are related to Title 11 proceedings) may be filed originally in state court, then subsequently removed by one of the parties to federal district court.' " *Id.* (quoting *In re Harris Pine Mills,* 44 F.3d 1431, 1435 (9th Cir. 1995) (offering no analysis for this interpretation)).

The *Lazar* court also cited 16 James Wm. Moore *et al., Moore's Federal Practice* § 107.15[8][b] (3d ed.2000), for the proposition that "unlike the general removal statute [§ 1441], which authorizes only defendants to remove, the bankruptcy removal statute authorizes any party to remove." 237 F.3d at 973 n. 2. While it is true that the referenced section of *Moore's Federal Practice* does contain that statement, just a few lines down it reads, "[b]ankruptcy removal applies only to the claims supported by bankruptcy jurisdiction, *rather than the entire civil action,* unless the federal district court has jurisdiction over the other claims." *Moore's,* § 107.15[8][b] (citing 28 U.S.C. § 1452) (emphasis added).

The only case cited by Defendants that offers any textual analysis of § 1452(a) vis a vis § 1441(a) is *Sommers v. Abshire,* 186 B.R. 407, 408–09 (E.D.Tex.1995), in which the court held that "section 1452 does not require that all defendants join in the removal of a state court proceeding." The *Sommers* court emphasized that, in contrast to § 1441(a), § 1452 provides that " '[a] party may remove any claim or cause of action in a civil action....' " 186 B.R. at 409. Citing *Creasy* and noting the obvious difference between "[a] party" and "the defendants," the court went on to hold that "any defendant has the right to remove a state court action without the consent of the other parties." *Id.*

In *Ross v. Thousand Adventures of Iowa,* 178 F.Supp.2d 996, 1001–02 (S.D.Iowa 2001), the court disagreed with the analysis of *Sommers,* opining that the *Sommers* court's "attachment of significance to the use of the term 'a party' seems misplaced." The court reasoned:

> [28 U.S.C. § ] 1446(a) [10] also states that "[a] defendant" can file a notice of removal, yet there is no question that the unanimity rule applies. The fact that "a defendant" or "a party" may file the notice of removal, based on federal question jurisdiction or related-to-bankruptcy jurisdiction, does nothing to dilute the unanimity rule when multiple defendants seek to remove a case to federal court. Under either scenario, if one properly served defendant does not join in removal and is not excused from joinder by one of the three exceptions, the case is not properly removed and should be remanded.

*Id.* at 1002. It appears to this court that the *Ross* court's comparison of the language of § 1452(a) to that of § 1446(a) may be unavailing, as § 1446 provides the *procedure* for removal, whereas § 1441 *authorizes* removal based on federal question or diversity jurisdiction.[11] Similarly,

---

10. 28 U.S.C. § 1446(a) provides:

A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

11. *See* note 3, *supra* ("the defendant or the defendants").

§ 1452(a) *authorizes* bankruptcy jurisdiction removal. The analysis, however, does raise an important question: does the *Sommers* court's rationale place too much weight on the "a party" language of § 1452(a)?

■ To reiterate, § 1452 reads, in pertinent part: "[a] party may remove any *claim or cause of action in a civil action* . . . ." (emphasis added). In the opinion of this court, it is a misreading of the plain language of § 1452 to interpret "claim or cause of action in a civil action" as authorizing "a party" to remove an entire case, a "civil action," from state court. If authorizing the removal of an entire case by any party asserting or defending against a claim related to a bankruptcy was the intent of Congress, why would it use language that markedly differs from that of § 1441(a) ("any civil action . . . may be removed")? The more sensible reading seems to be that § 1452 authorizes a party to remove a particular "claim or cause of action" that touches on the administration of a bankruptcy estate, but not an entire "action" involving claims and other parties that may have nothing to do with the bankruptcy.[12] Section 1452 does refer to "*any* claim or cause of action," but interpreting this phrase as allowing a defendant to remove a claim against another defendant, over that defendant's and the plaintiff's objections, would raise serious due process questions. As noted earlier, one of the Defendants in this case, Arthur Andersen, L.L.P., not only did not consent to removal of the claims against it but, in the Motion to Transfer, specifically stated that it did not "voluntarily consent or submit to the jurisdiction of the Bankruptcy Court."

Cognizant of the many courts that have held to the contrary, this court is hesitant to base its decision to remand on the ground that Defendants' removal in this case was procedurally defective. The foregoing discussion, however, illustrates a very serious concern this court has regarding the proper use of the procedure by which this case has come before the court.[13]

12. This interpretation makes even more sense when considered in the context of a district court's "related to" jurisdiction under § (1334(b)), discussed *infra* in section III.B. of this memorandum opinion. Aware of the constitutional problems lurking on the margins of bankruptcy jurisdiction, Congress perhaps sought to avoid an overbroad grant of removal jurisdiction that would improperly bring parties and claims with no relationship to a bankruptcy case into federal court. *See Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

13. This concern is deepened by the Supreme Court's decision in *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995). The Court held that the bar to appellate review of remand orders embodied in 28 U.S.C. § 1447(d), which applies to remand orders pertaining to cases removed on the bases of federal question and diversity jurisdiction, also applies to remand orders in cases removed under § 1452(a). *Id.* at 128. The court reasoned:

> There is no express indication in § 1452 that Congress intended that statute to be the exclusive provision governing removals and remands in bankruptcy. Nor is there any reason to infer from § 1447(d) that Congress intended to exclude bankruptcy cases from its coverage. The fact that § 1452 contains its own provision governing certain types of remands in bankruptcy, see § 1452(b) (authorizing remand on "any equitable ground" and precluding appellate review of any decision to remand or not on this basis), does not change our conclusion. There is no reason §§ 1447(d) and 1452 cannot comfortably coexist in the bankruptcy context. We must, therefore, give effect to both. *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992).

*Id.* at 129. *See also Belcufine v. Aloe*, 112 F.3d 633, 637 n. 6 (3rd Cir.1997) (acknowledging that the circuit's prior position that "sections 1441–1447 were never meant to be read into the procedures for bankruptcy removals" was called into question by the Su-

## B. "Related To" Jurisdiction

RSA also argues that the court should remand this case for lack of subject matter jurisdiction, as the claims involved in this case are not within the ambit of § 1334(b)'s "related to" jurisdiction. Essentially, RSA contends that the claims in this case are too remote from the Enron bankruptcy to sustain "related to" jurisdiction. The Defendants assert, however, that this case could give rise to enforceable indemnities and rights to contribution against Enron under various statutes, contracts, and Director & Officer insurance policies. Accordingly, Defendants contend, the outcome of this case could substantially affect the administration of the Enron bankruptcy estate. RSA counters that unliquidated, speculative claims for indemnity or contribution do not give rise to "related to" jurisdiction under § 1334(b).

The Eleventh Circuit has expressly adopted the "related to" jurisdiction test expounded by the Third Circuit in *Pacor v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984), where the court stated:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.* (citations omitted). Thus, the proceeding need not necessarily be against the debtor or against that debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*See In re Toledo*, 170 F.3d 1340, 1345 (11th Cir.1999) (citing *In re Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir.1990)). In *Toledo*, the court noted that "[t]he key word in the *Lemco Gypsum / Pacor* test is 'conceivable,' which makes the jurisdictional grant extremely broad." 170 F.3d at 1345 (citing *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 264 (3rd Cir.1991)).

The *Pacor* court, however, tempered its broad definition of "related to" with the following passage:

> On the other hand, the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of [former] section 1471(b). Judicial economy itself does not justify federal jurisdiction. *See generally Aldinger v. Howard*, 427 U.S. 1, 15, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976).

743 F.2d at 994. Analyzing a situation quite similar to the one presently before the court, the *Pacor* court went on to hold:

> Our examination of the Higgins–Pacor–Manville controversy leads us to conclude that the primary action between Higgins and Pacor would have no effect on the Manville bankruptcy estate, and therefore is not "related to" bankruptcy within the meaning of [former] section 1471(b). At best, it is a mere precursor to the potential third party claim for indemnification by Pacor against Manville. Yet the outcome of the Higgins–Pacor action would in no way bind Manville, in that it could not determine any rights, liabilities, or course of action of the debtor. Since Manville is not a party to the Higgins–Pacor action, it could not be bound by res judicata or collateral estoppel. (citations omitted). Even if

the Higgins–Pacor dispute is resolved in favor of Higgins (thereby keeping open the possibility of a third party claim), Manville would still be able to relitigate any issue, or adopt any position, in response to a subsequent claim by Pacor. Thus, the bankruptcy estate could not be affected in any way until the Pacor–Manville third party action is actually brought and tried. *Id.* at 995. Accordingly, it appears that under the *Pacor* test, actions between non-debtors that may give rise to indemnity claims against a bankruptcy estate are not sufficiently "related to" bankruptcy so as to support jurisdiction under § 1334(b). *See also Wise v. Travelers Indemnity Co.,* 192 F.Supp.2d 506, 514–517 (N.D.W.Va.2002) (collecting cases); *In re Asbestos Litigation,* 2002 WL 649400, *4 (D.Or.2002); *Armstrong v. Honeywell Int'l, Inc.,* 2002 WL 744676, *1 (S.D.Tex.2002); *In re VideOcart, Inc.,* 165 B.R. 740, 744 (Bankr.D.Mass.1994); *Da Silva v. American Savings,* 145 B.R. 9, 12 (S.D.Tex.1992).

At least two courts have held, however, that potential claims for indemnity or contribution against a debtor in bankruptcy can indeed give rise to bankruptcy jurisdiction under § 1334(b). *See Belcufine v. Aloe,* 112 F.3d 633, 636–37 (3d Cir.1997); *In re Dow Corning Corp.,* 86 F.3d 482, 490–494 (6th Cir.1996). In *Dow Corning,* the Sixth Circuit noted that "[i]t has become clear following *Pacor* that 'automatic' liability is not necessarily a prerequisite for a finding of 'related to' jurisdiction." 86 F.3d at 491 (citing *In re Marcus Hook Dev. Park Inc.,* 943 F.2d 261, 264 (3d Cir.1991)). In *Marcus Hook,* the Third Circuit commented:

A key word in [the] test is "conceivable." Certainty, or even likelihood, is not a requirement. Bankruptcy jurisdiction will exist so long as it is possible that a proceeding may impact on "the debtor's rights, liabilities, options, or freedom of action" or the "handling and administration of the bankruptcy estate."

943 F.2d at 264.

*Marcus Hook,* however, did not involve potential indemnity claims, but rather a motion for a final decree closing a bankruptcy case. *See id.* at 262. Accordingly, interpreting *Marcus Hook* as an abrogation or modification of the *Pacor* test is a questionable proposition. Nevertheless, the *Dow Corning* court held that bankruptcy jurisdiction did exist based on potential claims for indemnity between a debtor and several solvent co-defendants, largely basing its decision on the "qualitative difference" between the single suit in *Pacor* and the "thousands of potential indemnification claims" attendant to the breast implant litigation involving Dow Corning and its co-defendants. 86 F.3d at 494.

In *Belcufine,* the suit at issue potentially implicated contractual indemnity claims by officers against their bankrupt company. 112 F.3d at 634. Without addressing the question of whether such claims might be litigated by the bankrupt company subsequent to a judgment against the defendant officers, the court held that the broad language of *Pacor,* coupled with that case's recognition (in *dicta* ) that contractual indemnity claims could have an effect on a bankruptcy estate, supported bankruptcy jurisdiction over the suit between employees of the company and the non-debtor officers. *Id.* at 636–37. The situation in *Belcufine,* however, was somewhat unique. The third party suit resulted from the officers' failure to direct payment of the employees' wages, but the officers were prevented from doing so by operation of bankruptcy law. *Id.* at 634. Furthermore, the company's liability for the officers' potential liability was clear from the company's bylaws and apparently undisputed. *Id.* at 636. Accordingly, *Belcufine* is best

interpreted as an exception or special case in the context of the *Pacor* test.

In discussing the *Pacor* test, the Eleventh Circuit has emphasized the breadth of "related to" jurisdiction by echoing the *Marcus Hook* court's focus on the word "conceivable." *See In re Toledo*, 170 F.3d at 1345. *Toledo* involved a suit that had the potential to affect the value of a property interest that was an asset of the subject bankruptcy estate. *Id.* at 1345–46. Although the outcome of the suit had no actual effect on the estate, the court held that some effect was conceivable at the time the bankruptcy court heard the case, and this was enough to support jurisdiction. *Id.*

The *Toledo* court's stress on "conceivable" may suggest that the Eleventh Circuit is more inclined to follow the Sixth Circuit's lead in *Dow Corning*, rather than follow the holding of *Pacor*. Since *Toledo* did not involve potential indemnity claims, however, this is to some degree a matter of speculation. At bottom, the question is whether "any conceivable effect" means that the potential outcome of a case, however remote a possibility, will have a direct effect on a bankruptcy estate, or that the outcome of a case may give rise to a *potential* effect. Given the current state of the law, this appears to be an open question in the Eleventh Circuit.

The Defendants have produced a number of excerpts from agreements between them and Enron that, they claim, establish rights of indemnity against Enron in the event that they are held liable in this case. Furthermore, Defendants argue, they will be entitled to indemnification and contribution from Enron pursuant to the state and federal laws that form the basis of this suit. The Defendants concede, however, that there is some uncertainty with respect to the viability of these potential claims. *See* Transcript of Hearing on Outstanding Matters at 23–24. Accordingly, the court is of the opinion that, at the very least, subject matter jurisdiction in this case is rather unclear. Like the aforementioned uncertainty with respect to the procedural propriety of the Defendants' removal, this question about subject matter jurisdiction gives the court great pause with regard to whether it should proceed with this case.

### C. Discretionary Abstention Under § 1334(c)(1)

█ RSA also contends that, even assuming this case was properly removed and this court has jurisdiction under § 1334(b), the court should abstain under the permissive abstention provision of § 1334. Section 1334(c)(1) provides:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with state courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.[14]

Although this provision does not provide specific factors to be considered, courts have developed a set of considerations to aid in the determination of whether abstention in this context is warranted: (1) the effect, or lack thereof, on the efficient administration of the bankruptcy estate if

---

14. It has been noted that § 1334(c)(1) "is substantially the same as former section 1471(d) of title 28." *In re Pan American Corp.*, 950 F.2d 839, 845 (2d Cir.1991). Accordingly, "the legislative history of former section 1471(d) remains an important reference when construing its successor." *Id.* The House Report accompanying the 1978 legisla-

tion comments that the permissive abstention provision functions "to insure that [bankruptcy jurisdiction] is exercised only when appropriate to the expeditious disposition of bankruptcy cases...." H.R.Rep. No. 595, 95th Cong., 1st Sess. 51 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin. News 5963, 6012.

the discretionary abstention is exercised, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of related proceedings commenced in state court or other non-bankruptcy courts, (5) the jurisdictional basis, if any, other than § 1334, (6) the degree of relatedness or remoteness of the proceedings to the main bankruptcy case, (7) the substance rather than the form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden on the bankruptcy court's docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to jury trial, and (12) the presence in the proceeding of non-debtor parties. *See Cassidy v. Wyeth–Ayerst Laboratories,* 42 F.Supp.2d 1260, 1263 (M.D.Ala.1999) (citing *Matter of Chicago, Milwaukee, St. Paul & Pacific R.R. Co.,* 6 F.3d 1184, 1189 (7th Cir.1993)).

RSA argues that several factors present in this case weigh in favor of discretionary abstention: (1) state law issues predominate over the bankruptcy aspect of this case, (2) there is no other jurisdictional basis for removal of this case besides § 1452, (3) all of the parties to this case are non-debtors, (4) the Defendants are using the bankruptcy jurisdiction of the federal courts to forum-shop, (5) RSA would not be a party to any proceeding involving the indemnity or contribution claims by these Defendants against Enron, and (6) the assertion of bankruptcy jurisdiction over this case may interfere with RSA's right to a trial by jury.

Defendants argue that this case will necessarily affect the administration of the bankruptcy estate and therefore abstention is not warranted. Additionally, Defendants cite *Wilson v. Alfa Cos.,* 207 B.R. 241, 249 (Bankr.N.D.Ala.1996), for the proposition that the potential for "duplicative and uneconomical use of judicial resources" is another factor to be considered. Defendants assert that if this case is remanded and allowed to proceed in state court, it will entail a wasteful and duplicative use of judicial resources. Furthermore, Defendants argue, if this case proceeds in state court it may have a disruptive effect on the centralized litigation of Enron-related matters by potentially creating collateral estoppel effects.

It is undisputed that there are significant differences between the federal securities laws and the securities laws of Alabama. *See* Transcript of Hearing on Outstanding Matters at 72. RSA points to significantly less burdensome proof elements and the existence of liability for aiders and abettors in securities fraud cases. *Id.* at 61–64. Without contesting these differences, the Defendants argue that the Alabama securities laws do not present difficult or undecided questions of state law uniquely suited for determination by the state courts of Alabama. *Id.* at 72. Without more guidance from the parties, it is difficult for the court to know whether the parties' contentions have merit. But two points are clear— this suit is primarily based on state law, and there is an absence of any *per se* bankruptcy issues.

Furthermore, Defendants concede there is no other jurisdictional basis for this case besides § 1452 and § 1334(b), and that the bankruptcy jurisdiction provisions are being used in an attempt to get the case to Texas. While this case does share important elements with the cases consolidated in Judge Harmon's MDL court, the fact that Defendants admit that their ultimate aim is to have it transferred to Texas, and,

in fact, have now actually obtained a conditional transfer, only underscores the remoteness of this case from the Enron bankruptcy. Furthermore, RSA has demanded, and has a right to, a jury trial in this case, which would be problematic in the event of a transfer to a bankruptcy court.

There are two other considerations under the comity rubric that weigh heavily in favor of permissive abstention pursuant to § 1334(c)(1). The first is the special interests of states in the context of securities litigation, as embodied in 15 U.S.C. § 77p(d)(2)(A) and § 77v(a). 15 U.S.C. § 77p(d)(2)(A) exempts from the preemption provisions of the Securities Litigation Uniform Standards Act ("SLUSA") state governments and specifically state pension plans. This exemption, it is argued, embodies a Congressional recognition of the special needs of state governments and pension plans to be able to pursue state law remedies in state courts in order to protect their pensioners and taxpayers from securities fraud. 15 U.S.C. § 77v(a) disallows the removal of actions under the Securities Act of 1933 from any state court of competent jurisdiction. At a minimum, these provisions clearly evince a policy of special respect for the forum choices of state pension plans with regard to securities claims and for state courts whose jurisdiction is invoked to hear them, and adds a strong reason for abstention in this case not present in most other cases.

■ The second consideration centers around the legal uncertainty inherent in the procedural propriety of the Defendants' removal and the question of whether subject matter jurisdiction exists in this case, discussed *supra*. As noted, the Eleventh Circuit favors remand in situations where a court's subject matter jurisdiction is unclear. *See Burns*, 31 F.3d at 1095. Furthermore, it is a long-standing principle of federal jurisdiction that because of

the comity and federalism concerns attendant to the removal of cases from state courts, federal courts should remain ever-vigilant over the limits of their own jurisdiction. *See, e.g., Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *Adams v. Aero Services Int'l, Inc.*, 657 F.Supp. 519, 521 (E.D.Va.1987) ("Removal of cases to federal court is an infringement on state sovereignty.") In *Shamrock Oil*, the Court opined:

> Not only does the language of the Act of 1887 evidence the Congressional purpose to restrict the jurisdiction of the federal courts on removal, but the policy of the successive acts of Congress regulating the jurisdiction of federal courts is one calling for the strict construction of such legislation. The power reserved to the states under the Constitution to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the Judiciary Articles of the Constitution. "Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined."

313 U.S. at 108–09 (quoting *Healy v. Ratta*, 292 U.S. 263, 270, 54 S.Ct. 700, 78 L.Ed. 1248 (1934)).

■ As demonstrated by the discussions in the foregoing sections of this memorandum opinion, serious questions pervade the court's alleged jurisdiction over this case. Given the attenuated connection between this case and the Enron bankruptcy, this case is at best somewhere on the margin of federal jurisdiction, and therefore comity and respect for state law militate in favor of abstention under § 1334(c)(1). The court recognizes that the ends of judicial

economy might be well-served by the consolidation of this case with others before the MDL court, but judicial economy alone is not enough to override the comity concerns embodied in § 1334(c)(1). *See Pacor,* 743 F.2d at 994. The factors favoring abstention far outweigh those against it. Accordingly, the court concludes that, assuming it has jurisdiction in the first instance, as contended by the removing Defendants, it should abstain from hearing this case. Therefore, the case will be remanded to the Circuit Court of Montgomery County, Alabama. Because of the decision to abstain under § 1334(b), the court does not reach the additional issues raised by RSA.

A separate Order will be entered in accordance with this Memorandum Opinion.

### *ORDER*

In accordance with the Memorandum Opinion entered on this day, it is hereby ORDERED as follows:

1. Plaintiff's Motion to Remand or Abstain is GRANTED.

2. Defendants' Motion to Transfer Venue and all other pending motions except Defendant Kenneth Lay's Motion to Dismiss are DENIED as moot.

3. This case is REMANDED to the Circuit Court of Montgomery County, Alabama. The clerk is DIRECTED to take appropriate steps to effect the remand.

4. Defendant Kenneth Lay's Motion to Dismiss is left for disposition by the state court.