The RETIREMENT SYSTEMS OF ALABAMA, consisting of The Employees Retirement System of Alabama and The Teachers Retirement System of Alabama; The Public Education Employees' Health Insurance Fund; The Public Employees Individual Retirement Account Fund; The Clerks' and Registers' Supernumerary Fund; The Wildlife and Freshwater Fisheries Fund; The Alabama Cultural Resources Preservation Trust Fund; and The Alabama Trust Fund, Plaintiffs,

v.

J.P. MORGAN CHASE & CO., J.P. Morgan Securities, Inc., Citigroup, Inc., Salomon Smith Barney, Inc., Arthur Andersen, LLP, Bank of America Corp., Banc of America Securities LLC, Bernard J. Ebbers, Scott D. Sullivan, Bear Stearns & Co., Inc., et al., Defendants.

No. CV–02–A–898–N.

United States District Court, M.D. Alabama, Northern Division.

Sept. 24, 2002.

Thomas T. Gallion, III, Haskell Slaughter Young & Gallion LLC, Montgomery, AL, John Michael Rediker, Thomas L. Krebs, Michael K. K. Choy, Patricia C. Diak, Jeffrey V. Havercroft, Matthew T. Franklin, Kirk D. Smith, Haskell Slaughter Young & Rediker, LLC, Birmingham, AL, for plaintiffs.

David R. Boyd, Robin Garrett Laurie, Charles B. Paterson, Balch & Bingham, Montgomery, AL, Jay B. Kasner, John L. Gardiner, Skadden, Arps, Slate, Meagher & Flom, LLP, New York City, Warren B. Lightfoot, Robin H. Graves, Nikaa Baugh Jordan, Lightfoot, Franklin & White, L.L.C., Birmingham, AL, Eliot Lauer, Gary L. Cutler, Jonathan J. Walsh, Curtis, Mallet-Prevost, Colt & Mosle, LLP, New York City, Joseph C. Espy, III, James Flynn Mozingo, Benjamin Joseph Espy, Melton Espy & Williams PC, Montgomery, AL, R. David Kaufman, Brunini, Grantham, Crower & Hewes, Jackson, MS, David M. Maria, Arnold & Porter, Washington, DC, Alvin L. (Peck) Fox, Jr., Peter S. Fruin, Maynard, Cooper & Gale, P.C., Montgomery, AL, A. Inge Selden, III, Patrick C. Cooper, Maynard, Cooper & Gale, P.C., Birmingham, AL, for defendants.

## MEMORANDUM OPINION

ALBRITTON, Chief Judge.

This matter is before the court pursuant to the August 13, 2002, Order of this court (Doc. # 13) directing the Defendants to show cause why this case should not be remanded to the Circuit Court of Montgomery County, Alabama, for the same reasons discussed in this court's Memorandum Opinion in *Retirement Systems of Alabama v. Merrill Lynch & Co. et al.*, 209 F.Supp.2d 1257 (M.D.Ala.2002). Pending before the court are: 1) Plaintiffs' Motion to Remand or to Abstain (Doc. # 8), 2) Plaintiffs' Motion to Stay Consideration of Defendants' Motion to Transfer and For Preliminary Injunction (Doc. # 9), 3) Plaintiffs' Motion for Expedited Hearing on Remand and Stay Motions (Doc. # 10), and 4) Defendants' Salomon Smith Barney Inc. ("Salomon Smith Barney"), J.P. Morgan Securities Inc. ("JPM Securities"), Banc of America Securities LLC, and Citigroup, Inc. ("Citigroup") Motion to Stay Proceedings Pending Determination of the Multidistrict Panel and To Set Briefing Schedule (Doc. # 14).

After a careful and thorough review of the pleadings, motions, and memorandums filed by counsel in this case and for the reasons discussed below, the court finds that Plaintiffs' Motion to Remand or to Abstain is due to be GRANTED. The remaining pending motions are due to be DENIED.

### I. Procedural History

The Retirement Systems of Alabama and its constituent pension funds ("RSA") originally filed this case on July 15, 2002, in the Circuit Court of Montgomery County, Alabama. RSA amended its complaint on July 31, 2002. Defendants J.P. Morgan Chase & Co. ("JPM Chase"), Bank of America Corp., Banc of America Securities

LLC, Salomon Smith Barney, JPM Securities, and Citigroup timely removed this case to this court under 28 U.S.C. § 1452 on August 5, 2002.[1] Title 28 U.S.C. § 1452(a) provides:

A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334[2] of this title.

28 U.S.C. § 1452(a). Defendant Arthur Andersen LLP ("Andersen") did not join the Notice of Removal. RSA filed its timely motion to remand or abstain on August 9, 2002.

## II. Remand Standard

■ Federal courts are courts of limited jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir.1994); *Wymbs v. Republican State Executive Comm.*, 719 F.2d 1072, 1076 (11th Cir.1983), *cert. denied*, 465 U.S. 1103, 104 S.Ct. 1600, 80 L.Ed.2d 131 (1984). They may only hear cases that they have been authorized to hear by the Constitution or the Congress of the United States. *See Kokkonen*, 511 U.S. at 377, 114 S.Ct. 1673. The Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear. *See Burns*, 31 F.3d at 1095.

## III. Background

The financial decline of the WorldCom Corporation brought about this litigation. RSA has sued a number of entities and persons allegedly involved in, and/or with culpable knowledge of, the events and transactions leading to WorldCom's bankruptcy. WorldCom filed its petition for Chapter 11 relief on July 21, 2002, in the United States Bankruptcy Court for the Southern District of New York. Prior to WorldCom's filing for bankruptcy, RSA had purchased millions of dollars worth of WorldCom debt securities as well as large amounts of WorldCom common stock. These securities are now largely valueless. RSA's Amended Complaint alleges that the Defendants[3] violated the Alabama Securities Act, Ala.Code §§ 8–6–1 *et seq.*, the Alabama common law of aiding and abetting, the Alabama statutory and common law of fraud, including Ala.Code § 6–5–100

---

**1.** Defendants JPM Securities, Salomon Smith Barney, Banc of America Securities LLC, and Citigroup are collectively referred to as the "Underwriter Defendants" in this opinion. The Underwriter Defendants oppose RSA's Motion to Remand or Abstain. Bear Stearns & Co., Inc., later joined the arguments made by the Underwriter Defendants in opposing the Motion to Remand or Abstain. Defendant Bear Stearns' Joinder in Support of Underwriter Defendants' Memorandum in Response to Order to Show Cause Why This Case Should Not Be Remanded to State Court (Doc. # 22).

**2.** 28 U.S.C. § 1334(a) & (b), the applicable provisions to this case, state:

(a) Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all cases under title 11.
(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

**3.** "Defendants" refers to all defendants in the case. "Underwriter Defendants," as explained above, refers to the group of underwriters who are objecting to RSA's Motion to Remand or Abstain. *See supra* n. 1.

*et seq.*, and Sections 11, 12(a)(2), and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77*k*, 77*l*(a)(2), & 77*o*.[4]

WorldCom is not a defendant in this action. Despite the large number of civil actions involving both WorldCom and the defendants in this case, the Judicial Panel on Multidistrict Litigation ("JPML") has yet to designate a Multidistrict Litigation ("MDL") court to consolidate these cases. The defendants have notified this court that the JPML has set a hearing for September 26, 2002, to consider the various lawsuits relating to WorldCom's collapse. Defendants Memorandum in Support of the Motion to Stay Proceedings, pp. 4, 7 (Doc. # 15); Declaration of Charles B. Paterson, p. 2.

The facts in this case are quite similar to those found in this court's memorandum opinion in *Retirement Systems of Alabama v. Merrill Lynch & Co. et al.*, 209 F.Supp.2d 1257 (M.D.Ala.2002) (*"Merrill Lynch"*). Given the parties' familiarity with this decision, an extended discussion of that opinion is not necessary. The Order at issue in this case directed the Defendants to show cause why the *Merrill Lynch* opinion does not control the outcome of this case.

## IV. Underwriter Defendants' Motion to Transfer

A preliminary issue facing the court is the Underwriter Defendants' Motion to Stay Proceedings Pending Determination of the Multidistrict Panel (Doc. # 14). The Underwriter Defendants argue that *Gould v. National Life Insurance Co.*, 990 F.Supp. 1354 (M.D.Ala.1998) compels this court to consider their motion to stay prior to deciding RSA's Motion to Remand or

Abstain. Under Eleventh Circuit jurisprudence, "a court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir.1999). Because RSA's Motion to Remand or Abstain directly addresses the question of subject matter jurisdiction, the court will address that motion first in accordance with Eleventh Circuit guidance. *Accord Merrill Lynch*, 209 F.Supp.2d at 1261 (deciding first the question of subject matter jurisdiction in the motion to remand instead of the motion to transfer).

## V. RSA's Motion to Remand or Abstain

### A. Responses to Show Cause Order

Pursuant to this court's August 13, 2002, Order directing the Defendants to show cause why this case should not be remanded to the state circuit court, the Underwriter Defendants offer several reasons why this case is distinct from *Merrill Lynch*. First, they argue that unanimity is not required for removal of cases under 28 U.S.C. § 1452. The Underwriter Defendants seek to distinguish this case from *Merrill Lynch* both by conforming the removal to Rule 9027 of the Federal Rules of Bankruptcy Procedure and by consenting to the entry of final orders and judgments by the bankruptcy judge. The Underwriter Defendants also note that even if the JPML intervenes, they will still seek to have the Southern District of New York chosen as the MDL court, from which this case can be automatically referred to the bankruptcy court supervising the WorldCom reorganization. In *Merrill Lynch*,

---

**4.** The Securities Act of 1933 prevents the removal to the federal courts of any case brought in state court under 15 U.S.C. § 77*a et seq.*, unless the case is a "covered class action." 15 U.S.C. §§ 77*v* (a) & 77*p* (c). The Underwriter Defendants are seeking to remove the case solely under the bankruptcy removal statutes, 28 U.S.C. §§ 1334(b) & 1452.

the Merrill Lynch defendants[5] desired to transfer the case to the MDL court in Houston, Texas, instead of the Bankruptcy Court for the Southern District of New York, which was handling the Enron reorganization. 209 F.Supp.2d at 1260–61. The Merrill Lynch defendants wanted to use the bankruptcy removal procedure under 28 U.S.C. § 1452 to transfer the case not to a bankruptcy court but to another district court. *Id.*

Second, the Underwriter Defendants argue that this case is "related to" the WorldCom bankruptcy within the meaning of 28 U.S.C. §§ 1334(b) & 1452. In support of this argument, the Underwriter Defendants offer the indemnification agreements contained in the underwriting agreements between WorldCom and the Underwriter Defendants. The Underwriter Defendants argue that these indemnification agreements provide for a present right of reimbursement by WorldCom to the Underwriter Defendants for their legal fees, as incurred, for any defense involving an issuance of WorldCom securities. The Underwriter Defendants have also filed a Proof of Claim in the United States Bankruptcy Court for the Southern District of New York for their indemnification claim against WorldCom. This was not present in *Merrill Lynch. See* 209 F.Supp.2d at 1267 (noting absence of proof of claim filing).

RSA counters the distinctions purportedly drawn by the Underwriter Defendants between this case and *Merrill Lynch* by arguing that 28 U.S.C. § 1452 requires unanimity on the part of all of the defendants seeking to remove a case to federal court on the basis of "related to" jurisdiction. RSA also states that it has not participated in any filings before an MDL court involving WorldCom.

RSA reaffirms its position from *Merrill Lynch* that this case is not "related to" WorldCom's pending bankruptcy case in the Southern District of New York. In support of that position, RSA submits that the indemnity provisions at issue in this case cannot affect WorldCom's bankruptcy estate as required to establish "related to" jurisdiction under 28 U.S.C. § 1334. In the alternative, RSA argues that those indemnity provisions are invalid and unenforceable as against public policy following the rationale of *Globus v. Law Research Service, Inc.,* 418 F.2d 1276 (2d Cir.1969).

As to the Underwriter Defendants' Proof of Claim filed in bankruptcy court, RSA submits that such a filing does not distinguish this case from *Merrill Lynch.* In the alternative, RSA argues that such a claim should be disallowed as a contingent and unmatured claim under 11 U.S.C. § 502(e)(1)(B).[6]

RSA also argues that its position as the state retirement plan for state employees in Alabama allows it to assert sovereign immunity as a defense to being forced to litigate in federal court. *See Ala.Code* § 36–27–2 (establishing employees' retirement system and vesting it with same immunity from suit accorded to the State). RSA's argument relies heavily on the Supreme Court's line of recent sovereign im-

---

**5.** In *Merrill Lynch,* the defendants included JPM Chase, Citigroup, and Bank of America Corp. For the sake of clarity, the court will refer to the defendants in *Merrill Lynch* as "Merrill Lynch defendants."

**6.** 11 U.S.C. § 502(e)(1)(B) provides in pertinent part:

... the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that—... (B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution.

munity and Eleventh Amendment decisions, notably *Alden v. Maine*, 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999), and *Kimel v. Florida Board of Regents*, 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000). The crux of RSA's argument is that RSA's sovereign immunity cannot be set aside through the removal of this case by the Underwriter Defendants under 28 U.S.C. §§ 1334(b) & 1452. RSA argues that its sovereign immunity protects it from becoming involved in any litigation in federal court without its consent despite the fact that RSA initiated this suit against the Defendants.

### B. The Question of Unanimity under 28 U.S.C. § 1452

In an effort to distinguish this case from *Merrill Lynch*, the Underwriter Defendants argue that they conformed to Bankruptcy Rule 9027,[7] that Andersen, while not joining the Notice of Removal, nonetheless joins in the opposition to remand

and the Underwriter Defendants' Motion to Stay,[8] and that contrary to *Merrill Lynch*, the Underwriter Defendants actually intend to use the bankruptcy removal statutes to remove this case to a bankruptcy court. These steps do not counter the fact that all of the defendants did not join the Notice of Removal. Thus, the analysis of the issue falls back to the question presented in *Merrill Lynch*, namely, does § 1452 require all defendants to join a notice of removal?[9]

The Underwriter Defendants have relied on *Creasy v. Coleman Furniture Corp.*, 763 F.2d 656 (4th Cir.1985), for their assertion that unanimity among the defendants is not required for removal under § 1452. As discussed in *Merrill Lynch*, the *Creasy* court cited no authority in reaching this analysis of § 1452. *See Merrill Lynch*, 209 F.Supp.2d at 1262; *see also Creasy*, 763 F.2d at 660–61. Other courts have found that unanimity among the defendants is a requirement for removal un-

---

**7.** Rule 9027 sets forth the procedure for removing a case under bankruptcy law. It does not grant a district court jurisdiction to hear a case. While the Underwriter Defendants have conformed to Rule 9027, Andersen has not. As the Underwriter Defendants stated in their Notice of Removal (Doc. # 1), Andersen did not join the removal petition. The court must still analyze the jurisdictional question under 28 U.S.C. §§ 1334(b) & 1452. Federal jurisdiction is only properly found where the defendants meet the requirements of the applicable federal statutes, namely 28 U.S.C. §§ 1334 & 1452.

**8.** Andersen's joinder with the Underwriter Defendants in opposition to remand is only evidenced by the Underwriter Defendants' Memorandum of Law in Response to Show Cause Order Why This Case Should Not be Remanded to State Court at p. 21 n. 14. Andersen has not filed any documents with the court objecting to remand.

**9.** The language of § 1452 highlighted in *Merrill Lynch* states that "a party may remove any claim or cause of action" that is "related to" a bankruptcy proceeding. 209 F.Supp.2d

at 1264. 28 U.S.C. § 1441(a) uses the following language: "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants...." The court in *Sommers v. Abshire*, 186 B.R. 407, 408–09 (E.D.Tex.1995), contrasted the language of the two provisions and concluded that because of the differences between "a party" and "the defendants," § 1452's language of "a party" did not require all defendants to unanimously agree to remove a matter to the federal courts. The lack of clarity over the proper construction of § 1452 was a factor in this court's decision not to base its decision to remand or abstain in *Merrill Lynch* on the statutory construction of § 1452. 209 F.Supp.2d at 1264; *see id.* at 1264 n. 13 (explaining that the Supreme Court's decision in *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995), raised the implication that "the unanimity requirement of § 1441 is also applicable to removals under § 1452....").

der § 1452. *See Ross v. Thousand Adventures of Iowa, Inc.,* 178 F.Supp.2d 996, 1001–02 (S.D.Iowa 2001) (granting motion to remand where all defendants failed to join in notice of removal under § 1452 and rejecting the view in *Sommers v. Abshire,* that the unanimity rule does not apply to § 1452); *Whitney Nat'l Bank v. Bunch,* No. 00–2859, 2001 WL 87443, at *2 n. 9, 2001 U.S.Dist. LEXIS 1424, at *7 n. 9 (E.D.La. Jan. 31, 2001) (noting that the rule of unanimity under 28 U.S.C. § 1446(b) "applies to 'related to' removals pursuant to 28 U.S.C. § 1452"); *Hills v. Hernandez,* 1998 WL 241518, at *1–2, 1998 U.S.Dist. LEXIS 7475, at *4–5 (E.D.La. May 13, 1998) (applying rule of unanimity under 28 U.S.C. § 1446(b) to § 1452 and remanding due to failure of all defendants to join the notice of removal filed under § 1452).

This court is aware of other decisions that reach the opposite conclusion.[10] *See Merrill Lynch,* 209 F.Supp.2d at 1262–63 (listing cases that rely on *Creasy* "without undertaking any independent analysis of § 1452"). The Underwriter Defendants' attempts to distinguish this case have not presented this court with any authority compelling a different result than was reached in *Merrill Lynch.* The Underwriter Defendants rest their argument on the conclusion that their construction of § 1452 is correct and that § 1452 can be reconciled with the other removal provisions in 28 U.S.C. §§ 1441(a) & 1446.[11] Underwriter Defendants' Memorandum, p. 20. As this court noted in *Merrill Lynch,* the Supreme Court reasoned in *Things Remembered, Inc. v. Petrarca,* 516 U.S.

124, 129, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995), that "[t]here is no express indication in § 1452 that Congress intended that statute to be the exclusive provision governing removals and remands in bankruptcy." *See Merrill Lynch,* 209 FSupp.2d at 1264 n. 13 (emphasizing import of the *Things Remembered* decision on the analysis of § 1452). Following the reasoning in *Things Remembered,* the proper analysis of a removal taken under § 1452 may very well include asking whether the removal is unanimous as is required by § 1441. Where doubts exist about the district court's jurisdiction in a removed action, the Eleventh Circuit counsels the district courts to remand. *See Burns,* 31 F.3d at 1095.

■ Despite the Underwriter Defendants' intent to actually remove this case to a bankruptcy court instead of another district court, a bankruptcy court cannot exercise jurisdiction unless the statutory prerequisites for that jurisdiction are met. *See Kokkonen,* 511 U.S. at 377, 114 S.Ct. 1673 ("Federal courts ... possess only that power authorized by Constitution and statute."). In this case, it is at best unclear as to whether the Underwriter Defendants fulfilled the statutory procedural requirements for removing this case pursuant to § 1452. The Underwriter Defendants have failed to show why the question of unanimity under a § 1452 notice of removal should not be answered by referring to *Merrill Lynch.*

### C. 28 U.S.C §§ 1334 & 1452: Related To Jurisdiction

The key distinction that the Underwriter Defendants have drawn between this

---

10. *See Abner v. Mate Creek Loading Inc. (In re Mid–Atlantic Res. Corp.),* 283 B.R. 176, 183 (S.D.W.Va.2002) (*citing Creasy* for the proposition that unanimity is not required for removal under § 1452); *Beasley v. Pers. Fin. Corp.,* 279 B.R. 523, 529 (S.D.Miss.2002) (same).

11. 28 U.S.C. § 1446(a) provides, in part: "A defendant or defendants desiring to remove any civil action ... shall file in the district court ... a notice of removal...."

case and *Merrill Lynch* is that the Underwriter Defendants have filed a Proof of Claim in the bankruptcy court handling the WorldCom estate. *See* Declaration of Charles B. Paterson, Aug. 20, 2002, Exh. 1. The Underwriter Defendants allege that this Proof of Claim and the language of the contractual indemnity agreements contained in the Underwriting Agreements between WorldCom and the Underwriter Defendants make this case "related to" the WorldCom reorganization. The Eleventh Circuit set out the test for federal "related to" jurisdiction in *In re Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir.1990), by adopting without alteration the standard set forth in *Pacor, Inc. v. Higgins,* 743 F.2d 984 (3d Cir.1984). The *Pacor* court explained the test by saying:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. (citations omitted). Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Id.* at 994. The Supreme Court spoke approvingly about this test in *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). The Eleventh Circuit later added that "[t]he key word in the *Lemco Gypsum* test is 'conceivable,' which makes the jurisdictional grant very broad." *In re Toledo,* 170 F.3d 1340, 1345 (11th Cir.1999).

There is some case law which supports the Underwriter Defendants' argument.

In *In re Salem Mills, Inc.*, 148 B.R. 505, 510 (Bankr.N.D.Ill.1992), the court explained that the filing of a proof of claim by a third-party against a debtor in order to seek to enforce an indemnity agreement against the debtor "merely transforms the improbable into the conceivable." In *Salem Mills,* the bankruptcy court found that "related to" jurisdiction existed where a third-party had a contractual right from a settlement agreement to pursue indemnification claims against the debtor. *Id.* at 507, 510. By filing the proof of claim, the third-party demonstrated the "real or tangible impact" that the indemnification agreement could have on the estate. *Id.* at 510. According to the *Salem Mills* court, this claim was enough to justify "related to" jurisdiction. *Id.; see id.* at 509 ("If a proceeding is related to the underlying bankruptcy by virtue of an indemnification agreement against the debtor, there must be something to evidence the impact, like a proof of claim...."); *In re U S. Brass Corp.,* 173 B.R. 1000, 1004 (Bankr.E.D.Tex.1994) (automatically asserting "related to" jurisdiction upon the filing of a proof of claim by a third-party against the debtor based on indemnity claims a contractual indemnity agreement). *But see Salem Mills,* 148 B.R. at 509 (stating that even if a proof of claim is filed, a court must still value the claim and determine "the true impact the third-party proceeding may have upon the allocation of assets among creditors, *if any*") (emphasis added).

This court, however, is hesitant to reach the conclusion that the act of filing a proof of claim in bankruptcy court is sufficient to guarantee "related to" jurisdiction. *See Kalamazoo Realty Venture Ltd. P'ship v. Blockbuster Entm't Corp.*, 249 B.R. 879, 885 (N.D.Ill.2000) (stating that filing of proof of claim on an indemnity agreement against a debtor "might confer 'related to' jurisdiction"); *In re Spaulding & Co.,* 131

B.R. 84, 89 (N.D.Ill.1990) (explaining, in the context of "related to" jurisdiction regarding a reimbursement action, that if the defendant filed a proof of claim against the debtor, "it may be necessary to revisit this [jurisdictional] issue"). The parties have cited no cases in which the Eleventh Circuit addresses this issue, and research has not revealed any, either. The court is also mindful of the fact that despite the broad language of the *Pacor* standard, the application of the test to claims for indemnification often results in mixed conclusions.[12]

In *Pacor* itself, the court found that "related to" jurisdiction was not present in a dispute between Pacor (the Philadelphia Asbestos Company) and the Higgins family, asbestos products liability plaintiffs. 743 F.2d at 995. Pacor, similarly to the Underwriter Defendants in this case, attempted to argue that its possible indemnification claim against Johns–Manville Corporation following the resolution of the Pacor–Higgins case would affect the Johns–Manville bankruptcy estate. *Id.* The Third Circuit, despite the broad language of its test, refused to agree and stated that "[t]he fact remains that any judgment received by the plaintiff Higgins could not itself result in even a contingent claim against Manville, since Pacor would still be obligated to bring an entirely separate proceeding to receive indemnification." *Id.*

It is worth noting that the seemingly broad scope of the *Pacor* test is indeed checked by the court's language following its announcement of the standard.

> Our examination of the Higgins–Pacor–Manville controversy leads us to conclude that the primary action between Higgins and Pacor would have no effect on the Manville bankruptcy estate, and therefore is not "related to" bankruptcy within the meaning of section [1334(b)]. At best, it is a mere precursor to the potential third party claim for indemnification by Pacor against Manville. Yet the outcome of the Higgins–Pacor action would in no way bind Manville, in that it could not determine any rights, liabilities, or course of action of the debtor.... Even if the Higgins–Pacor dispute is resolved in favor of Higgins, ... Manville would still be able to relitigate any issue, or adopt any position, in response to a subsequent claim by Pacor.

*Pacor*, 743 F.2d at 995 (citations omitted). The *Pacor* situation is analogous to the situation presented in this case. The current action against the Underwriter Defendants is, at best, a precursor to further litigation over the indemnity agreement. The language of the indemnity agreement (discussed *infra*) is far from certain in establishing when and if indemnification accrues to an indemnified party. The *Pacor* court's decision that "related to" jurisdiction was lacking despite the expansive scope of the standard emphasizes the burden placed on the Underwriter Defendants in this case to conclusively show that "related to" jurisdiction is indeed present.

**12.** Cases involving indemnification claims and concluding that "related to" jurisdiction does not exist include: *In re Federal–Mogul Global, Inc.,* ("*Federal–Mogul # 2*") 300 F.3d 368 (3d Cir.2002); *Pacor Inc., v. Higgins,* 743 F.2d 984 (3d Cir.1984); *Wise v. Travelers Indem. Co.,* 192 F.Supp.2d 506 (N.D.W.Va. 2002); *Skylark v. Honeywell Int'l, Inc.,* No. 01–5069, 2002 U.S.Dist. LEXIS 10554, at *8– 10 (S.D.Fla Jan. 25, 2002); *In re Asbestos Litig.,* 271 B.R. 118 (S.D.W.Va.2001); and *In re Spaulding & Co.,* 131 B.R. 84 (N.D.Ill. 1990).

Cases involving indemnification claims and concluding that "related to" jurisdiction does exist include: *In re Celotex Corp.,* 124 F.3d 619 (4th Cir.1997) (proofs of claim filed by both plaintiff and defendant against Celotex) and *In re Dow Corning Corp.,* 86 F.3d 482 (6th Cir.1996).

*See Federal–Mogul # 2,* 300 F.3d at 381–82 (following *Pacor* and concluding that "because any indemnification claims that the [defendants] might have against Debtors have not yet accrued and would require another lawsuit before they could have an impact on Federal–Mogul's bankruptcy proceeding . . . the District Court's ruling that it lacked subject-matter jurisdiction" was not error).

Some courts have relied on the implication in *Pacor* that contractual indemnity agreements automatically confer "related to" jurisdiction when a defendant could use the agreement to pursue a claim against the debtor's estate.[13] *See Pacor,* 743 F.2d at 995. The *Pacor* court distinguished the Pacor–Higgins dispute from *In re Brentano's,* 27 B.R. 90 (Bankr.S.D.N.Y.1983). In dicta discussing *Brentano's,* the Third Circuit suggested that contractual indemnity agreements "would automatically result in indemnification against [the debtor]."[14] *Pacor,* 743 F.2d at 995. The *Pacor* court went on to distinguish Pacor's possible claim for indemnification against Johns–Manville from the facts in *Brentano's. Pacor,* 743 F.2d at 995.

In *Brentano's,* MacMillan agreed to serve as a guarantor for Brentano's lease of real property from Pine Realty, Inc. 27 B.R. at 91. The guaranty agreement obligated Brentano's to indemnify MacMillan for any liability incurred while serving as a guarantor. *Id.* When Brentano's filed for bankruptcy, Pine Realty commenced a suit in state court on the guarantee against MacMillan. *Id.* MacMillan moved for a

stay of the suit in bankruptcy court. The bankruptcy court found "related to" jurisdiction based on the indemnity agreement and its possible effects, in the event of Pine Realty prevailing over MacMillan, on the bankruptcy estate. In its analysis of *Brentano's,* the *Pacor* court reasoned that the guaranty and indemnity agreement would automatically affect the debtor's estate in the event Pine Realty prevailed over MacMillan. *Pacor,* 743 F.2d at 995.

*Brentano's* is distinguishable for another reason as well. MacMillan served as the guarantor for eleven separate Brentano's leases. 27 B.R. at 91. MacMillan was the largest unsecured creditor in the Brentano's bankruptcy case, and the court stated that "the disposition of [MacMillan's] claim is one of the most important aspects (if not the most important) of the debtor's efforts to reorganize." *Id.* The *Brentano's* court's analysis suggests that its decision in finding "related to" jurisdiction, while based on the contractual agreements between Brentano's and MacMillan, also was based on MacMillan's role as Brentano's largest unsecured creditor and on the fact that resolving MacMillan's claims was crucial to the outcome of the reorganization efforts. *See id.* at 92 ("The disposition of this claim and other similar claims involving Brentano's leases, MacMillan guaranties, and the Brentano's–MacMillan indemnification agreement will ultimately determine the fate of this reorganization effort.").

█ The fact-specific line-drawing engaged in by the *Pacor* court and others

---

**13.** *See In re Celotex Corp.,* 124 F.3d at 627 (contractual indemnification obligations creates "related to" jurisdiction); *U.S. Brass Corp.,* 173 B.R. at 1004 (contractual indemnity agreement establishes "related to" jurisdiction upon filing of proof of claim). *But see In re Federal–Mogul Global, Inc., ("Federal–Mogul # 1"),* 282 B.R. 301, 310–11 (Bankr.D.Del. 2002) ("[C]ases since *Pacor* have failed to

endorse the proposition that any contract of indemnification will support an extension of related to jurisdiction."), *appeal dismissed and mandamus denied,* 300 F.3d 368 (3d Cir. 2002).

**14.** *See Federal–Mogul # 1,* 282 B.R. at 312 ("[*Pacor*] may also be read to suggest that an indemnity agreement alone will not suffice.").

suggest that a close reading of the indemnity agreement between the Underwriter Defendants and WorldCom is in order. The language of the agreement is clear.

> [WorldCom] will not be liable ... to the extent that any such loss, claim, damage or untrue statement or omission or alleged omission made ... in reliance upon and in conformity with written information furnished to the Company by or on behalf of any Underwriter
>
> ...
>
> [S]uch indemnity with respect to any Basic Prospectus or Preliminary Prospectus shall not inure to the benefit of any Underwriter ... from whom the person asserting any such loss, claim, damage or liability purchased the Offered Securities which are the subject thereof if such person did not receive a copy of the Prospectus ... at or prior to the confirmation of the sale....

Declaration of Charles B. Paterson, Aug. 20, 2002, Underwriters Agreement, p. 15. Without passing judgment on the merits of the Underwriter Defendants' claim against WorldCom, the language of the indemnity agreement suggests that before the claims in this lawsuit can have any conceivable effect on WorldCom's bankruptcy estate, it must be established that the Underwriter Defendants have made no "untrue statement[s] or omission[s] or alleged omission[s]" in any representations they made to WorldCom. WorldCom's liability under the indemnity agreement is contingent upon such a finding. Presently, the Underwriter Defendants have presented no evidence to this court of WorldCom conceding the fact that it is liable to the Underwriter Defendants. It is indeed doubtful that WorldCom, even upon the Underwriter Defendants prevailing in this lawsuit, will automatically acknowledge that it was the source of "alleged omission[s]" and immediately pay any indemni-

ty allegedly owed to the Underwriter Defendants. The filing of a proof of claim in the bankruptcy court will not erase the contingency contained in the indemnity agreement.

■ "The key word in the *Lemco Gypsum/Pacor* test is 'conceivable'...." *In re Toledo*, 170 F.3d at 1345. As the foregoing discussion shows, it appears that it is not "conceivable" that this lawsuit will affect WorldCom's bankruptcy estate. Where a lawsuit's potential effect on a bankruptcy estate is "speculative and premature," then such a case fails to warrant federal bankruptcy "related to" jurisdiction. *Skylark v. Honeywell Int'l, Inc.*, No. 01–5069, 2002 U.S.Dist. LEXIS 10554 (S.D.Fla. Jan. 25, 2002); *see Federal–Mogul # 1*, 282 B.R. at 311 (noting that even though present suit may create "very substantial claims, against the debtors in the future," based on indemnification claims, the underlying facts concerning the indemnity will have to be adjudicated before the current claims can affect the estate).

Additionally, the completion of this lawsuit may not have *any* impact on the WorldCom bankruptcy estate. *See Federal–Mogul # 2*, 300 F.3d at 382 (stating that because indemnification claims against debtor would necessitate another lawsuit before it could impact the debtor's estate, the finding that jurisdiction was lacking was not error); *Bank United v. Manley*, 273 B.R. 229, 243–44 (N.D.Ala.2001) ("[B]ankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor." (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995))). Regardless of how this lawsuit ends, it will not increase or decrease the size of the WorldCom estate. RSA is not suing WorldCom for any damages. As discussed above, the Underwriter Defendants' indemnification claims are contingent, not absolute. *See Merrill*

*Lynch,* 209 F.Supp.2d at 1267 (noting that one concern this court had in exercising "related to" jurisdiction was the viability of the claims for indemnification). *Cf. Davis v. Life Investors Ins. Co. of Am.,* 282 B.R. 186, 190 (S.D.Miss.2002) (finding "related to" jurisdiction where the proof of claim against the debtor was based on an *"absolute* right of indemnity" against the debtor (emphasis added)).

Thus, this court concludes that uncertainty remains over the issue of § 1334(b) "related to" jurisdiction despite the indemnity agreement and the Underwriter Defendants' proof of claim. It is not clear that the Underwriter Defendants have the same relationship to WorldCom as the third-party defendant did in *Brentano's,* i.e. the largest unsecured creditor. *See Federal–Mogul # 1,* 282 B.R. at 311–12 (noting relationship of MacMillan to Brentano's as a factor in *Brentano's* decision). Other courts have been hesitant to find "related to" jurisdiction where the tenuous basis for jurisdiction is an indemnity agreement, the certainly of which is questioned. *See id.* at 311 (refusing to find "related to" jurisdiction on an indemnity agreement where it was unclear that the agreement would bind the debtor). The *Federal–Mogul # 1* court explained:

> To the extent that the validity of an indemnity agreement is in doubt, the directness between the third-party action and a judicial ruling that will affect the estate is attenuated. Moreover, as the jurisprudence shows, cases in which related-to jurisdiction is founded solely on an indemnification agreement between otherwise unrelated parties are not the rule but the exception.

*Id.* at 311. Based on the above discussion, this court concludes that the Underwriter Defendants have failed to show why this case should not follow the decision of this court in *Merrill Lynch.*

## VI. Discretionary Abstention: 28 U.S.C. § 1334(c)

This court abstained under 28 U.S.C. § 1334(c)(1) [15] from exercising "related to" jurisdiction in *Merrill Lynch.* 209 F.Supp.2d at 1267–68. In *Cassidy v. Wyeth–Ayerst Laboratories,* 42 F.Supp.2d 1260, 1263 (M.D.Ala.1999), the court set out twelve factors to consider when deciding whether to abstain. The twelve factors are:

> (1) the effect, or lack thereof, on the efficient administration of the bankruptcy estate if the discretionary abstention is exercised, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of related proceedings commenced in state court or other non-bankruptcy courts, (5) the jurisdictional basis, if any, other than § 1334, (6) the degree of relatedness or remoteness of the proceedings to the main bankruptcy case, (7) the substance rather than the form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden on the bankruptcy court's docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to jury trial,

**15.** 28 U.S.C. § 1334(c)(1) provides:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or re-

spect for state law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

and (12) the presence in the proceeding of non-debtor parties. *Cassidy,* 42 F.Supp.2d at 1263. The Underwriter Defendants have attempted to set out distinctions between this case and *Merrill Lynch,* and they argue that this court should not abstain from exercising jurisdiction in this case.

Despite the Underwriter Defendants' arguments to the contrary, the concerns about the existence of jurisdiction under §§ 1334(b) & 1452 still exist. All defendants did not join the removal notice. This court's concerns about subject matter jurisdiction under the "related to" prong of § 1334(b) have not been resolved. Furthermore, similarly to *Merrill Lynch,* this case involves both state statutory and common law claims, and RSA has requested a jury trial. *See* 209 F.Supp.2d at 1268 (noting the court's consideration of those factors). Like *Merrill Lynch,* the Underwriter Defendants' purported basis for jurisdiction is limited to §§ 1334(b) & 1452. As explained above, that basis for jurisdiction is tenuous at best. To exercise jurisdiction would contradict the guidance of the Eleventh Circuit, which favors remand in cases where federal jurisdiction is not absolutely clear. *See Burns,* 31 F.3d at 1095.

The various factors discussed in *Cassidy* warrant abstention in this case. Only non-debtor parties are involved in this litigation. RSA has requested a jury trial, and that request will be difficult to meet in bankruptcy court. This action is relatively remote from the bankruptcy proceeding in that it will not have any effect on WorldCom's bankruptcy estate. The Underwriter Defendants have failed to show why this case is not governed by *Merrill Lynch* and why this court should not exercise discretionary abstention for the reasons explained in *Merrill Lynch.* This court concludes that, even assuming jurisdiction exists under §§ 1334(b) & 1452, it should abstain under 28 U.S.C. § 1334(c)(1) from hearing this case. Accordingly, the court does not reach any additional issues raised by RSA.

A separate Order will be entered in accordance with this Memorandum Opinion.